UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Angel DIAZ–CARREON,
Defendant–Appellant.

No. 89–8083.

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1990.

Rehearing and Rehearing En Banc
Denied Nov. 13, 1990.

Robert J. Perez, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Jose Angel Diaz–Carreon ("Diaz–Carreon") appeals his convictions on two counts of controlled substances violations: importation of marijuana into the United States from Mexico in violation of 21 U.S.C. §§ 952(a), 960(a)(1) (1982) and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982). He argues that the evidence was insufficient to prove a "knowing" violation of the law and that the prosecutor made improper comments that compromised Diaz–Carreon's right to a fair trial. Unable to find that the district court committed reversible error, this Court affirms Diaz–Carreon's convictions.

## I. FACTS AND PROCEDURAL HISTORY

Approximately 5:40 a.m. on June 20, 1989, Jose Angel Diaz–Carreon attempted to drive a stake bed pickup truck with California license plates across the international border into El Paso, Texas. He presented an amnesty card to the customs inspector at the Paso Del Norte Port of Entry and declared that he was bringing nothing into the United States. The inspector, finding it unusual that a person arriving early from Mexico in a vehicle with California plates declared neither lunch nor luggage, conducted a cursory inspection of the truck. She walked around the truck and tapped the sides of the unusual convex sideboards. Her taps produced different sounds—some solid, some hollow.

The customs inspector returned to the driver's side of the vehicle and asked Diaz–Carreon several questions. Diaz–Carreon responded that he was driving the truck to his residence in Canutillo, Texas. He explained that he was not the owner of the truck and admitted that he had no driver's license. As the customs inspector continued her questioning, Diaz–Carreon's previously friendly demeanor deteriorated into extreme and noticeable nervousness. He became increasingly agitated and unable to communicate. Suspecting that some of the truck's stakes might contain controlled sub-

stances, the customs inspector directed Diaz–Carreon to secondary inspection.

Customs officials at secondary inspection further questioned Diaz–Carreon. He stated that he did not own the truck and was driving it to its owner in Anthony, New Mexico (approximately six miles from Canutillo, Texas). He again maintained that he was bringing nothing into the United States. Meanwhile, federal agents conducted a successful canine sniff test on the pickup truck. The agents dismantled the sideboards on the truck, discovering approximately 161 pounds of marijuana. Customs officials subsequently escorted Diaz–Carreon to a detention cell and searched him for contraband and weapons. Toward the end of the search, before being informed that agents had found marijuana in the truck, Diaz–Carreon nervously volunteered in Spanish, "If the truck is loaded, I didn't know about it."

Diaz–Carreon waived his legal rights and consented to an interview with a special agent of the customs service. In the interview, Diaz–Carreon stated that he lived in Puerta de Anapra, Mexico, but was traveling to Anthony, New Mexico, to search for work on a ranch. He revealed that a man known simply as Ruben had loaned him the truck so that he could find employment. However, Diaz–Carreon commented that he had met Ruben only a few days earlier and did not know where Ruben could be found. Moreover, Diaz–Carreon could not explain how Ruben would recover the pickup truck.[1]

On June 20, 1989, Diaz–Carreon was charged with importation of marijuana into the United States from Mexico[2] and possession of marijuana with intent to distribute.[3] After a short trial that began on October 18, 1989, the jury returned a guilty verdict on both counts. The district court sentenced Diaz–Carreon to forty-one months of imprisonment on each count, the sentences to be served concurrently.

## II. DISCUSSION

On appeal, Diaz–Carreon raises two arguments. First, he complains that the evidence was insufficient to prove a "knowing" violation of the law. Second, he complains that the prosecutor made improper statements that compromised Diaz–Carreon's right to a fair trial. This Court will examine each of these arguments in turn.

### A. Sufficiency of the Evidence

■ In order to sustain a conviction for the crime of possession of marijuana with intent to distribute, the Government must prove three elements: (1) knowing (2) possession of marijuana (3) with intent to distribute it. *United States v. Williams–Hendricks*, 805 F.2d 496, 500 (5th Cir.1986); *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982). A conviction for the crime of importation of marijuana requires proof that the defendant knowingly played a role in bringing marijuana from a foreign country into the United States. *Williams–Hendricks*, 805 F.2d at 500. In either event, the Government must adduce sufficient evidence of "guilty knowledge," a requirement Diaz–Carreon contends was not satisfied in the instant case.

■ In considering Diaz–Carreon's allegations, this Court "must view the evidence and all reasonable inferences that may be drawn from the evidence in a light most favorable to the government." *United States v. Prieto–Tejas*, 779 F.2d 1098, 1101 (5th Cir.1986). To support a conviction, the

**1.** Diaz–Carreon testified at trial that he had given Ruben precise directions to the ranch where Diaz–Carreon sought employment.

**2.** *See* 21 U.S.C. § 952(a) (1982), which provides in pertinent part:
(a) It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter....

**3.** *See* 21 U.S.C. § 841(a) (1982), which provides in pertinent part:
(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

evidence need not exclude every hypothesis of innocence, so long as a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). "A jury is free to choose among reasonable constructions of the evidence." *Id.*

 In the instant case, the Government had the difficult task to prove that Diaz–Carreon knowingly possessed and imported marijuana. The Government could have, and did in fact, offer evidence that Diaz–Carreon was the driver of a vehicle which contained contraband. Knowledge of the presence of a controlled substance often may be inferred from the exercise of control over a vehicle in which the illegal substance is concealed. *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988); *Vergara*, 687 F.2d at 62. Here, however, evidence that Diaz–Carreon was the driver of the pickup truck would have been insufficient *in itself* to support a finding of guilty knowledge. The marijuana in this case was smuggled in hidden compartments which were not clearly visible or readily accessible to the defendant. Under these circumstances, control of the vehicle in which the contraband is cleverly hidden does not support an inference of guilty knowledge; it is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise.[4] Thus, in hidden compartment cases, this Court has repeatedly required additional evidence indicating knowledge—circumstances evidencing a *consciousness of guilt* on the part of the defendant. *United States v. Olivier–Becerril*, 861 F.2d 424, 426–27 (5th Cir.1988); *Richardson*, 848 F.2d at 513; *United States v. Del Aguila–Reyes*, 722 F.2d 155, 157 (5th Cir.1983).

While Diaz–Carreon's control of the pickup truck does not in itself constitute sufficient evidence that he knowingly possessed and imported marijuana, the Government in the instant case produced significant additional evidence that tends to establish Diaz–Carreon's guilty knowledge. Specifically, the Government asserts that the following circumstances adequately evidence the defendant's consciousness of guilt: (1) Diaz–Carreon's nervousness; (2) Diaz–Carreon's conflicting statements to customs officials; and (3) Diaz–Carreon's implausible story.

*Nervousness.* Nervous behavior at an inspection station frequently constitutes persuasive evidence of guilty knowledge. *See Richardson*, 848 F.2d at 513; *Williams–Hendricks*, 805 F.2d at 500–01; *United States v. Moreno*, 579 F.2d 371, 372 (5th Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). Nervousness, however, is "a normal reaction to circumstances which one does not understand." *Williams–Hendricks*, 805 F.2d at 501. In the absence of facts which suggest that the defendant's nervousness or anxiety derives from an underlying consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty knowledge. Ample facts nonetheless exist in the instant case which suggest that Diaz–Carreon's nervousness derived from an underlying consciousness of criminal behavior. For example, *before being told that agents had discovered marijuana in the pickup truck*, Diaz–Carreon volunteered, "If the truck is loaded, I didn't know about it." The jury could reasonably infer that this simple statement, delivered in a rush of anxiety, indicated that Diaz–Carreon knew of the existence of the marijuana in the truck and hoped to divert suspicion from himself.

*Inconsistent statements to customs officials.* Perhaps the strongest evidence of a

---

**4.** The Government argues that Diaz–Carreon was hardly an unwitting carrier. It notes that the condition of the sideboards on the pickup truck was highly unusual: they were freshly painted, swollen in appearance, and spongy to the touch. The Government maintains that a person familiar with the usual condition and

appearance of a stake bed truck would have suspected that these atypical sideboards concealed contraband. This may well be true. However, the Government failed to introduce at trial any evidence demonstrating that Diaz–Carreon himself was familiar with the type of stake bed truck involved in this case.

criminal defendant's guilty knowledge is inconsistent statements to federal officials. *See, e.g., Richardson,* 848 F.2d at 513 (inconsistent statements to Drug Enforcement Agency and Border Patrol agents); *Williams–Hendricks,* 805 F.2d at 501 (inconsistent statements to customs inspectors). Inconsistent statements are inherently suspicious; a factfinder could reasonably conclude that they mask an underlying consciousness of guilt. In the present case, Diaz–Carreon first told customs officials that he was traveling to Canutillo, Texas, and later told customs officials that he was traveling to Anthony, New Mexico. He initially informed customs officials that he was a resident of Anthony, but later he admitted that he was a resident of Puerta de Anapra, Mexico. Diaz–Carreon's inconsistent account of these details casts considerable doubt on the veracity of his claim that he was unaware of the presence of the marijuana.

*Implausible story.* This Court has acknowledged that a "less-than-credible explanation" for a defendant's actions is "part of the overall circumstantial evidence from which possession and knowledge may be inferred." *United States v. Phillips,* 496 F.2d 1395, 1398 n. 6 (5th Cir.1974), *cert. denied,* 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). During an interview with a special agent of the customs service, Diaz–Carreon asserted that a man named Ruben, whom Diaz–Carreon had known only for a couple of days, had loaned him the pickup truck so that he could find employment. Diaz–Carreon maintained that Ruben neither informed him nor even hinted that the vehicle concealed controlled substances. However, Diaz–Carreon could not reveal—or refused to reveal—either the place where the mysterious Ruben lived or the place where Ruben was to retrieve the truck. The omission of these details seriously weakened the plausibility of Diaz–Carreon's portrayal. An implausible account of exculpatory events suggests that the defendant desires to obscure his criminal responsibility. A factfinder need not ignore such an implausible account; under appropriate conditions, the implausible account provides persuasive circumstantial evidence of the defendant's consciousness of guilt.[5]

Considered together, these circumstances presented sufficient evidence of Diaz–Carreon's consciousness of guilt. The jury certainly was not *obligated* on these facts to find that Diaz–Carreon possessed guilty knowledge; "it could well have rejected inferences which are reasonable to draw from these facts." *Del Aguila–Reyes,* 722 F.2d at 158. The jury in this case, however, determined that the evidence demonstrated Diaz–Carreon's guilty knowledge beyond a reasonable doubt. This Court is not inclined to disturb the jury verdict. On the totality of the circumstances, this Court concludes that there was sufficient evidence to support the jury finding that Diaz–Carreon knowingly imported and possessed marijuana with the intent to distribute.

### B. *Prosecutorial Comments*

The prosecutor occupies a distinctive position in the criminal justice system: he is the hammer that sparks fire on the anvil of justice.[6] He can strike a devastating blow to the career of a recidivist; he can release the shackles on an innocent victim of the system. But with great power comes great responsibility—responsibility that

---

5. In the instant case, evidence introduced at trial has cast additional doubt on the plausibility of Diaz–Carreon's account of the events. Diaz–Carreon's wife, for example, testified that she overheard a man (presumably Ruben) tell Diaz–Carreon that he would give him $400 if Diaz–Carreon drove the truck across the border. This testimony suggests that Diaz–Carreon might have been compensated for his role in the attempt to smuggle the marijuana across the border.

6. *See Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."); *United States v. Murrah,* 888 F.2d 24, 27 (5th Cir.1989) ("As representative of the government the prosecutor is compelled to seek justice, not convictions.").

easily can be abused. "Justice is served only when convictions are sought and secured in a manner consistent with the rules that have been crafted with great care over the centuries." *United States v. Murrah,* 888 F.2d 24, 27 (5th Cir.1989). The Government's representative may "prosecute with earnestness and vigor—indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Because the prosecutor wields such great power, the opportunities for him to strike foul blows are many. One blow that has particularly troubled this Court is unfair argument to the jury. Inflammatory or misleading prosecutorial comments must be viewed with concern; *persistent* inflammatory or misleading prosecutorial comments must be viewed with alarm.

■■■ This Court recognizes, however, that a criminal defendant bears a substantial burden when attempting to demonstrate that improper prosecutorial comments constitute reversible error. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Lowenberg,* 853 F.2d 295, 302 (5th Cir.1988) (quoting *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989). Improper prosecutorial comments require reversal only if the comments substantially affected the defendant's right to a fair trial. *Murrah,* 888 F.2d at 27; *United States v. Rhoden,* 453 F.2d 598, 600 (5th Cir.), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972). In evaluating the extent to which prosecutorial comments have affected the defendant's right to a

fair trial, three factors are probative: the magnitude of the prejudicial effect of the remarks, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt. *Murrah,* 888 F.2d at 28; *United States v. Iredia,* 866 F.2d 114, 117 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989); *United States v. McPhee,* 731 F.2d 1150, 1152 (5th Cir.1984). Upon evaluation of these factors in the instant case, this Court is unable to discern that certain prosecutorial comments, though unwise and certainly unprofessional, have substantially affected Diaz–Carreon's right to a fair trial.

■■■ First, Diaz–Carreon argues that the Government prosecutor improperly attempted to shift the burden of proof.[7] During argument, the prosecutor stated:

> Ladies and gentlemen, what this case comes down to is one thing. The credibility that you are going to give the witnesses that testified. And it's like a balance. You're either going to believe the Defendant and you're going to disbelieve everyone else, or you're going to believe other people and you're going to disbelieve the Defendant. And that's all it comes down to.

Record at 253. Divorced from context, this statement might appear to suggest that in order to acquit Diaz–Carreon, the jury must disbelieve *all* of the Government's witnesses, and believe *all* of Diaz–Carreon's witnesses. Of course, such an implication would be incorrect: a jury could believe all of the Government witnesses and disbelieve all of the defense witnesses, but still find that the Government failed to meet its burden of proof.[8] When the pros-

---

7. A prosecutor may not "misstate the jury's function or the burden of proof." *United States v. Cantu,* 876 F.2d 1134, 1138 (5th Cir.1989).

8. *See, e.g., United States v. Vargas,* 583 F.2d 380, 387 (7th Cir.1978) (even assuming that the testimony of the prosecution and defense witnesses contained unavoidable contradictions, it does not follow as a matter of law that in order to acquit the defendant the jury had to believe that the Government witnesses lied). *Vargas,* however, differs in one significant—and dispositive—detail from the instant case. In *Vargas,* the prosecutor *expressly* informed the jury that it could acquit only if it disbelieved the Government witnesses. In the instant case, the questionable prosecutorial remark was much more ambiguous. Read in the light of other argument during trial, it is *unlikely* that the remark in the instant case significantly prejudiced Diaz–Carreon's rights.

ecutor's argument is considered in context, however, it is apparent that the prejudicial effect of the questionable comments is limited. The prosecutor's remarks followed a heated attack by Diaz–Carreon's counsel on the credibility of the customs agents who testified for the Government. The prosecutor correctly (if perhaps inartfully) noted that witness credibility was a critical issue in the case against Diaz–Carreon. Then, following the questionable comments, the prosecutor attempted to demonstrate that the Government witnesses were more credible than the defense witnesses. At no point did the prosecutor inform the jury the facts it *must* find in order to reach a certain verdict—indeed, the prosecutor expressly disavowed that he had a prerogative to do so.[9] Rather, the prosecutor's apparent intent was (1) to inform the jury simply that it was *likely* to believe the witnesses of one side at the expense of the other side's witnesses, and (2) to suggest that the Government witnesses were the witnesses the jury could find most believable. In this light, such a suggestion was not impermissible.[10]

In another complaint of prosecutorial burden-shifting, Diaz–Carreon contends that the prosecutor, in response to a defense argument that the Government had bungled an opportunity to obtain important physical evidence by failing to search for Diaz–Carreon's fingerprints on the concealed marijuana, improperly suggested

that the defendant had an obligation to introduce fingerprint evidence. The prosecutor commented:

As far as fingerprints, ladies and gentlemen, as an Assistant U.S. Attorney, I should insist that Officer Shreve and the Department of Customs, hire fingerprint experts just to throw away. Maybe we ought to hire an expert who can dust the packages so we can take fingerprints off of each one of these. Maybe we'll get 100 fingerprints that are comparable off of 171, 182 packages that we have, and then we compare them against known fingerprints, and then that fingerprint expert or those fingerprint experts bring in a bill for $10,000 for the work that they've done and I charge it to the U.S. Government, because ladies and gentlemen, we don't have a national debt. And I have money in my budget to just throw away, because I should present that kind of evidence to you.

Record at 257. According to Diaz–Carreon, this argument implied that if the defendant desired fingerprint evidence, he should have introduced it himself. Diaz–Carreon concedes, however, that he failed to object to the prosecutor's allegedly questionable comments on fingerprint evidence. Thus, this Court reviews the comments under the "plain error" standard [11]—whether the comments "seriously affected the fairness, integrity, or public reputation of judicial proceeding[s] and resulted in a miscar-

---

9. Throughout closing argument, the prosecutor acknowledged that he had the burden to prove guilt beyond a reasonable doubt. At one point, the prosecutor recognized:

[A]s the Government representative, I have the burden of proof in this particular case, and that burden of proof is to prove to you beyond a reasonable doubt.... This means that I have to prove to you and leave you satisfied through you using your own common sense, your own reason, but you're left without any doubt that this really happened.
Record at 230.

10. Diaz–Carreon also complains that the prosecutor used a sarcastic tone of voice when he stated the jury might disbelieve the Government's witnesses. Diaz–Carreon contends that the prosecutor's use of sarcasm was an oblique attempt to invoke national loyalty as a reason to return a guilty verdict. Diaz–Carreon relies

upon *United States v. Herrera*, 531 F.2d 788 (5th Cir.1976). In *Herrera*, the prosecutor argued that a jury could disregard violations of the defendant's constitutional rights because in the defendant's home country of Honduras an American might be extended fewer protections than the United States extends to criminal defendants. This Court reasoned the prosecutor's *direct* appeal to an irrelevant factor such as national loyalty was "egregiously inappropriate." *Id.* at 790. Any sarcasm that the prosecutor used in the instant case, while admittedly unprofessional, does not rise to the level of the inflammatory comments in *Herrera*. The sarcasm here can hardly be said to have prejudiced Diaz–Carreon's rights.

11. *See* Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

riage of justice." *United States v. Goff,* 847 F.2d 149, 162 (5th Cir.), *cert. denied sub nom. Kuntze v. United States,* 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988). The prosecutor's comments here do not rise to the level of plain error. The prosecutor never stated that Diaz–Carreon had an obligation to produce evidence, but simply responded to a strong attack on the Government's use of circumstantial evidence.[12] While the prosecutor's appeal to the national debt may be a novel argument, it did not seriously affect the fairness or integrity of the judicial proceedings.

 Finally, Diaz–Carreon argues that the prosecutor impugned the character of defense counsel.[13] During argument, the prosecutor commented:

> Ladies and gentlemen, if there's a zealot in this particular courtroom, it's the defense attorney. Thank God he's a defense attorney and not part of the Government.

Record at 256. Such a comment was not only improper, it was disgraceful. The comment was a personal attack on the demeanor, as well as the status, of the defense counsel; it was clearly irrelevent to the guilt or innocence of the criminal defendant and apparently intended solely to prompt the jury to question the believability of defense counsel's arguments.[14]

 Nonetheless, in response to the prosecutor's improper comment, the defense counsel objected and received exactly the remedy he requested. The district court sustained the defendant's objection and, in strong language, instructed the jury to disregard the prosecutor's comment. Further, the court admonished the prosecutor to discontinue his personal attacks on defense counsel.[15] After receiving this favorable instruction from the court, the defense counsel elected not to pursue his objection; he neither requested nor received a mistrial.

The prosecutor's attack on the demeanor—and perhaps even the character—of defense counsel was undoubtedly inappropriate. It is not sufficient merely to conclude, however, that the prosecutor's comments were improper. Inappropriate or improper prosecutorial remarks are not necessarily reversible error. To support a reversal of the defendant's conviction, the comments

---

**12.** Diaz–Carreon's reliance on *United States v. Garza,* 608 F.2d 659 (5th Cir.1979), is misplaced. In *Garza,* the prosecutor informed the jury that he did not commence a case against a criminal defendant until he was personally convinced that the defendant was guilty. This Court found such a statement improper, noting that a prosecutor "may not express his personal opinion on the merits of the case or the credibility of witnesses.... Furthermore, he may not suggest *that evidence which was not presented at trial* provides additional grounds for finding [the] defendant guilty." *Id.* at 663. In the instant case, the prosecutor attempted to explain the Government's failure to introduce fingerprint evidence; he neither stated an opinion on the merits of the case nor suggested that evidence which was not introduced might provide an additional basis for a guilty verdict.

**13.** A prosecutor may not challenge the integrity or impugn the character of defense counsel. *United States v. De La Rosa,* 911 F.2d 985, 991 (5th Cir.1990); *United States v. Murrah,* 888 F.2d 24, 27 (5th Cir.1989).

**14.** In evaluating the propriety of prosecutorial comments, it is appropriate to examine the comments in context. It might not have been offensive if the prosecutor, without additional comment, had described the defense counsel as a "zealot." A zealot can be defined as an individu-

al blessed with eagerness and passion. History provides countless examples of revered zealots—zealots for peace, zealots for justice, zealots for righteousness. An advocate in the highest tradition should be so consumed with eagerness and passion for his client's cause that he becomes, in effect, a zealot.

It is apparent from the record, however, that the prosecutor in the instant case intended no such charitable meaning. A dictionary provides an alternate definition for the word "zealot"—"a *fanatical* partisan." Webster's New Collegiate Dictionary 1352 (1979) (emphasis added). That the prosecutor intended to convey this negative meaning is evident from his further comment: "Thank God he's a defense attorney and not part of the Government." Read in context, the prosecutor's comments suggest that defense counsel is a fanatic who would take any measure, including untruths, to secure his client's acquittal.

**15.** The exact language of the district court's curative instruction is as follows:

DEFENSE COUNSEL: I object, Your Honor. That's an unethical argument.

PROSECUTOR: That's not unethical, Your Honor. He invited it.

THE COURT: No, he didn't. It's improper and the jury is instructed to disregard it. And I'll instruct you not to do that again.

must "affect substantially the defendant's right to a fair trial." *United States v. Murrah*, 888 F.2d at 27.[16] In the instant case, the district court's strong curative instruction and condemnation of the prosecutor's tactics effectively neutralized the damaging effect of the improper prosecutorial remarks. In addition, the failure of defense counsel to seek a mistrial suggests that any lingering prejudice from the improper comments was minimal.

Persistent questionable prosecutorial comments demand careful scrutiny to ensure that a defendant's rights are not compromised. Here, the combination of certain circumstances, principally the defense counsel's failure adequately to preserve error and the district court's able use of firm curative instructions, persuades this Court that Diaz–Carreon's right to a fair trial was not reversibly compromised. However, the prosecutor's repeated reliance throughout the trial on sarcasm, innuendo and misstatement comes dangerously close to reversible error. Prosecutors are reminded that the bounds of this Court's tolerance are narrow. Continued careless prosecutorial comments can—and will—cause the reversal of otherwise carefully wrought convictions.

## III. CONCLUSION

This Court is unpersuaded that the evidence is insufficient to support the district court's finding of a "knowing" violation of the law or that the prosecutor's improper remarks compromised Diaz–Carreon's right to a fair trial. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

16. *United States v. Murrah* is similar to the instant case, but differs in two significant respects. First, the prosecutorial remarks in *Murrah* were egregiously offensive: the prosecutor accused the defense counsel of illegally and unethically withholding a witness. 888 F.2d at 26. Second, the district court's curative instruction was weak: the court merely instructed the jury to "recall what the evidence was in the case." *Id.* On the basis of these circumstances, this Court concluded that the defendant's right to a fair trial was substantially affected. Conversely, in the instant case, the prosecutor's remarks, though offensive, did not imply illegal defense counsel behavior, and the district court's curative instruction was particularly strong. The combination of these circumstances was less likely to produce a result that debilitated the defendant's rights.