# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 98-50930

_____

### UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

### EZEQUIEL CHAVEZ-SALCIDO,

Defendant-Appellant.

_____

### Appeal from the United States District Court
### for the Western District of Texas
### (P-98-CR-74-2)
_____

### November 5, 1999

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Having been convicted for importation and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 841(a)(1), Ezequiel Chavez-Salcido contests the sufficiency of the evidence (claims *not* aware of marijuana hidden in vehicle in which a passenger) and being denied a "minor or minimal role" sentencing downward adjustment (claims *only* "courier" status). We **AFFIRM**.

## I.

At approximately 6:00 p.m. on Friday, 3 April 1998, Customs Inspector Insley, inspecting traffic entering the United States from Mexico at the Presidio, Texas, port of entry, stopped an

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

automobile in which Chavez was a passenger. *The driver, Chavez's codefendant Luis Contreras-Lara, told the Inspector that he and Chavez were headed to El Paso; Chavez nodded, indicating agreement.* Because Contreras had to lower his head to answer questions through the open window and appeared nervous, the Inspector directed the vehicle to the secondary inspection point. (At trial, the Inspector testified that the vehicle was "a regular sized car" — "I think it was a four door Chrysler Labaron" — but that, in order to respond to the Inspector, Contreras, instead of just looking over and responding, as "most people" do, had to "lower his head a little bit and crank it out"; that this, again, "was a little unusual. I remember him kind of cranking his head ... underneath the roof a little bit like he was cramped for space.")

When the Inspector rejoined Chavez and Contreras at the secondary inspection point, they had exited the vehicle; and Contreras had opened the trunk to show it was empty. The Inspector testified that this was unusual, because in such situations, people usually remain in their vehicles. *Customs Inspector Seward testified that, while at the secondary inspection point, Contreras and Chavez told him they were going to El Paso (consistent with what Inspector Insley had been told).*

While examining the interior of the vehicle, which was registered under Contreras' name, Inspector Insley noticed that the floorboard was elevated; he lifted the carpet and discovered a hatch. When a drug-detecting dog alerted, the Inspector had the vehicle searched.

Inspector Insley testified that, when he sat in the driver's seat, his knees were elevated "like [he] was sitting on a phone book". Special Agent McGraw , a criminal investigator located at the port of entry, testified that the entire floorboard had been raised about eight inches, and the passenger seat was "tilted".

Customs Agents discovered four trap doors leading to a hidden compartment: one door near the passenger's feet, one near the driver's feet, and two in the back seat floor. They found 62 pounds of marijuana, and seized from Contreras what appeared to be a drug ledger. (Contreras later pleaded guilty to possession of the marijuana, and received a 12-month prison sentence, referenced in part II.B., *infra*, concerning denial of the downward adjustment for Chavez.)

As was customary after a drug seizure, Special Agent McGraw, referenced *supra*, was immediately dispatched to the scene. Around 6:30 that same evening, Chavez was given a form (in Spanish) advising him of his rights, which Chavez read, signed, and indicated he understood. With the assistance of Special Agent Koker, who had been trained in Spanish, Special Agent McGraw interviewed Chavez. The Special Agents testified that, during the interview, Chavez was "extremely nervous", spoke rapidly, and took rapid breaths.

Special Agent Koker testified that Chavez told the Special Agents: that Contreras had approached him the night before (Thursday night) while Chavez was at work in Chihuahua City, asked him to go to Denver with him to pick up an income tax refund at a

- 3 -

mountain resort where Contreras had worked, and offered to pay for the trip; that he had known Contreras for about a year; that they planned to return to Chihuahua City by Sunday morning, because Chavez had to work that night; and that he (Chavez) was going to Denver to visit his girlfriend (initially, Chavez could *not* remember her last name, *not* recalling it until an hour later).

Immigration Inspector Cook, who processed Chavez for deportation at the port of entry around 8:30 that same evening, testified that Chavez was very inquisitive about what was going to happen to him; and that Chavez's questions (in Spanish) translated into "what happens if I knew it was there". The Inspector also testified that, when he asked Chavez whether he knew the marijuana was in the vehicle, Chavez hesitated, looked down, and swallowed nervously, before stating that he did *not* know.

At trial, Chavez testified that Contreras was going to Denver to purchase an automobile and needed him to return the other vehicle to Chihuahua City; that, en route to the port of entry, he (Chavez) did *not* drive the vehicle or notice anything unusual about its interior, because he had left work around 5:00 a.m. and had slept all the way to the port of entry; that he did *not* take a change of clothes, because they were *not* going to stay overnight; and that he did *not* bring any money, because his work check had *not* been deposited. *Chavez denied that either he or Contreras told the Customs Inspectors that they were going to El Paso.*

Chavez moved for judgment of acquittal at the close of the Government's case and at the close of all the evidence. A jury

convicted him of both importing and possessing marijuana with intent to distribute.

At sentencing, Chavez made only one objection to the presentence report (PSR): that he should receive a downward adjustment for his mitigating role in the offense. The district court denied the adjustment, adopted the PSR's findings and recommendation, and sentenced Chavez, *inter alia*, to two concurrent terms of 27 months' imprisonment.

## II.

### A.

For the sufficiency challenge, Chavez having timely moved for judgment of acquittal, we must determine "whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt". **United States v. Greer**, 137 F.3d 247, 249 (5th Cir. 1998) (citing **United States v. Bell**, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)); *see* **United States v. Pankhurst**, 118 F.3d 345, 351-52 (5th Cir. 1997). All reasonable constructions of the evidence are available to the jury, and neither elimination of each reasonable theory of innocence nor contradiction of all conclusions other than guilt is required. *See* **United States v. Lopez**, 74 F.3d 575, 577 (5th Cir. 1996) (citations omitted). In short, we must give credence to "all credibility choices that tend to support the jury's verdict". **United States v. McKenzie**, 768 F.2d 602, 605 (5th Cir. 1985) (citations omitted).

To convict on both charges, the Government had to prove that Chavez knowingly brought the marijuana into the United States, and possessed it with the intent to distribute it. *See United States v. Diaz-Carreon*, 915 F.2d 951, 953 (5th Cir. 1990) (citing *United States v. Williams-Hendricks*, 805 F.2d 496, 500 (5th Cir. 1986)). The elements of both offenses may be established by circumstantial evidence. *See United States v. Cardenas*, 9 F.3d 1139, 1158 (5th Cir. 1993) (possession with intent to distribute); *United States v. Manotas-Mejia*, 824 F.2d 360, 367 (5th Cir. 1987) (importation).

Although several defendants can jointly possess a proscribed substance, either actually or constructively, *Cardenas*, 9 F.3d at 1158 (citing *United States v. Molinar-Apodaca*, 889 F.2d 1417, 1423 (5th Cir. 1989)), the Government must establish an adequate nexus between the drugs and the defendant. *United States v. Cardenas*, 748 F.2d 1015, 1020 (5th Cir. 1984) (citing *United States v. Ferg*, 504 F.2d 914 (5th Cir. 1974)). Accordingly, mere presence in a vehicle where drugs are found, or association with the person who controls the drugs or vehicle, alone, are *not* sufficient to establish possession. *Id.* (quoting *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973)). Therefore, for "hidden compartment cases", like the one at hand, the Government must produce "additional evidence indicating knowledge – circumstances evidencing a *consciousness of guilt* on the part of the defendant". *Diaz-Carreon*, 915 F.2d at 954 (citations omitted; emphasis in original).

Chavez contests the sufficiency of the evidence on *only one element* for each of the two offenses — he claims he was *not* aware of the concealed marijuana. But, based upon our "commonsense, fact-specific" review of the earlier described evidence, *see **United States v. Smith***, 930 F.2d 1081, 1086 (5th Cir. 1991), including viewing that evidence in the light most favorable to the Government (as required by our standard of review), a rational juror could have concluded, beyond a reasonable doubt, that Chavez knowingly played a role in bringing the marijuana into the United States and possessed it with intent to distribute it.

For example, the jury was shown a videotape, produced by Agent McGraw, in which an Agent, approximately the same height as Chavez, sat in the front seat of Contreras' vehicle and stated that his head was touching the vehicle's ceiling. A rational juror could reasonably infer that, at some point en route to the border, Chavez would have asked about the vehicle's unmistakably altered dimensions. In short, the jurors were entitled to reject Chavez's testimony that he slept the entire trip to the port of entry and never noticed the elevated seats. *See **United States v. Mulderig***, 120 F.3d 534, 547 (5th Cir. 1997) (quoting **United States v. Ayala**, 887 F.2d 62, 67 (5th Cir. 1989) (permissible for jurors to "rely on their 'common sense' and 'knowledge of the natural tendencies and inclinations of human beings'")).

Other evidence supporting Chavez's knowing about the marijuana included: his contradictory statements regarding his destination (first El Paso, then Denver); his story that he was traveling to

- 7 -

Denver to see his girlfriend, in the light of his inability to remember her last name and failure to bring money or a change of clothing; the difficulty of making a round trip between Friday and Sunday, as Chavez claimed, and still being able to spend time with his girlfriend in Denver, given the estimated 15-20 hour drive from Chihuahua City, Mexico, to Denver, Colorado; his nervous appearance when questioned; his hesitation before denying knowledge of the drugs; and his repeated inquiries about the consequences if he had known about the drugs' presence. *See **Diaz-Carreon***, 915 F.2d at 954-55 (nervousness, conflicting statements to inspection officials, and implausible story may adequately establish consciousness of guilt); ***United States v. Pennington***, 20 F.3d 593, 598 (5th Cir. 1994) ("circuitous route" and timing of trip supported conclusion defendants possessed marijuana).

Again, Chavez claims, for his sufficiency challenge, *only non-awareness of the marijuana*. In short, this is a classic jury issue. For example, as discussed, two Government witnesses testified that Chavez had indicated (to one) and stated (to the other) that his destination was El Paso (*not Denver*); in his testimony, Chavez denied doing so. As stated, viewing the evidence, as we must, in the light most favorable to the Government, a rational juror could have found, beyond a reasonable doubt, that Chavez *was aware* of the marijuana.

### B.

In claiming entitlement to the minor or minimal participation adjustment under Guideline § 3B1.2, Chavez states that the

commentary applies to this case, § 3B1.2 commentary, n.2 (suggesting adjustment "where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs"); and notes that Contreras, who owned the vehicle and admitted ownership of the marijuana, received a significantly lesser sentence than he.

But, to qualify for the adjustment, Chavez had to show that he was "substantially less culpable than" Contreras. *Id*. at background n.; *see, e.g.*, **United States v. Buenrostro**, 868 F.2d 135, 138 (5th Cir. 1989) ("§ 3B1.2 turns upon culpability, *not* courier status") (emphasis added). Factual determinations regarding Chavez's role are reviewed *only* for clear error. *E.g.,* **United States v. Zuniga**, 18 F.3d 1254, 1261 (5th Cir. 1994) (citation omitted).

At sentencing, Chavez contended that, because Contreras accepted responsibility for, and claimed ownership of, the marijuana, Contreras was primarily to profit from it; that, at most, Chavez was only along to help drive; that it was unfair for him to receive a sentence twice as long as Contreras'; that he had no history of drug trafficking or other criminal involvement; and that he had steadfastly maintained his innocence.

The district court considered this evidence, as well as (1) Contreras' statement to the probation officer (included in Chavez's PSR) that Chavez was aware of the drugs, and (2) the jury's similar finding concerning Chavez's awareness. The district judge found *no* differentiation between the roles of Chavez and Contreras.

- 9 -

Based on our review of the record, the court did *not* clearly err in finding that Chavez was *not* "substantially less culpable" than Contreras.  The downward adjustment denial must stand.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED*.