**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 16, 2007**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))))

No. 05-51736

))))))))))))))))))))))))))))

UNITED STATES OF AMERICA,

             Plaintiff-Appellee,

      v.

BRUNO GARZA, JR.,

             Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. DR-04-CR-203

Before KING, GARZA and PRADO, Circuit Judges.

Per Curiam:[*]

     After a jury trial, Bruno Garza, Jr. ("Garza"), was
convicted of possession with intent to distribute more than five
kilograms of a substance or mixture containing cocaine, in
violation of 21 U.S.C. § 841, and of importation of more than
five kilograms of a substance or mixture containing cocaine, in
violation of 21 U.S.C. §§ 952 and 960. On appeal, Garza raises

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

three objections: first, that there was insufficient evidence to prove that Garza knowingly possessed or imported cocaine; second, that there was insufficient evidence to prove that Garza possessed and imported more than five kilograms of cocaine; and third, that the district court erred by allowing the government to introduce a particular receipt into evidence. For the reasons that follow, we AFFIRM Garza's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 11:30 p.m. on February 7, 2004, Garza was stopped by border patrol while attempting to cross from Mexico into Eagle Pass, Texas. Garza stated that he had traveled to Mexico to buy liquor and tacos, both of which could be seen on the seat of the van he was driving. Garza claimed that the van belonged to his brother-in-law, and that it had been in his own possession for two weeks. After Garza was referred to the secondary inspection area, Garza stated that the owner of the van was named Luis Rodriguez[1] and that Garza had the van because he was a mechanic and had been working on it. After the customs inspector looked at the registration papers for the van and saw that it was registered to Luis Flores, the inspector stated to Garza, "I thought you said this belonged to a Luis Rodriguez." Garza then claimed he had said that the van belonged to Luis

---

[1] Garza suggests that either he did not say "Luis Rodriguez" and that the inspector misheard his statement, or that he said "Luis Rodriguez" by mistake.

Flores. When questioned about the time frame of his visit, Garza stated that he had been in Mexico for about two hours. When asked why it took so long to obtain liquor and tacos, Garza then added that he had first seen "some friends."

The inspectors' suspicions having been aroused, a drug dog was brought to the van and alerted to the presence of cocaine. The inspectors drilled a hole in the van and discovered a white powder. They then found a trapdoor to the dashboard and removed ten "bricks" of white powder, wrapped in plastic and covered in carbon paper. The weight of the packages was 9.68 kilograms; after accounting for the weight of the wrapping materials, the weight of the white substances was 8.85 kilograms. Samples of the white powder were sent to a Drug Enforcement Administration ("DEA") laboratory in Dallas, Texas, for testing. The tests confirmed that the samples were eighty-five percent pure powder cocaine.

After the cocaine was discovered in the van he was driving, Garza was arrested. He agreed to speak with law enforcement and then offered a story different from that which he had provided before. Garza stated that he had been drinking earlier in the day with a friend at a bar in Eagle Pass, Texas, and that he and his friend had decided to go to a bar in Piedras Negras, Mexico, to continue drinking there. Garza stated that after he and his friend had been in Mexico "for a while," his friend asked Garza to bring the friend's van back into the United States.

3

On March 3, 2004, a grand jury indicted Garza for possession with intent to distribute more than five kilograms of a substance or mixture containing cocaine, in violation of 21 U.S.C. § 841, and for importation of more than five kilograms of a substance or mixture containing cocaine, in violation of 21 U.S.C. §§ 952 and 960. On September 29, 2004, a jury convicted Garza on both counts. Garza was sentenced to 121 months in prison on each count, served concurrently, to be followed by five years of supervised release on each count, served concurrently. Garza was also fined $1000 for each count and a $100 special assessment fee. Garza timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

This is a direct appeal from a final judgment of the United States District Court in a criminal case. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

Our standard of review is the same for both of Garza's sufficiency of the evidence claims. Because Garza filed a motion for acquittal at the close of all the evidence raising these objections, we ask whether a reasonable jury could find that the evidence established the essential elements of the crime beyond a reasonable doubt. United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998). We view the evidence in the light most favorable to the verdict and give the government the benefit of all reasonable inferences and credibility choices. United States v. Harvard, 103 F.3d 412, 421 (5th Cir. 1997). We do so because

4

"[a] jury is free to choose among reasonable constructions of the evidence." United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982).

For Garza's claim that the district court improperly admitted a receipt into evidence, we review a district court's decision to admit or exclude evidence for abuse of discretion. United States v. Pace, 10 F.3d 1106, 1115 (5th Cir. 1993).

### III. DISCUSSION

**A.   Garza's Knowledge of the Presence of Cocaine in the Van**

To convict Garza of possession with intent to distribute under 21 U.S.C. § 841, the government must prove beyond a reasonable doubt that Garza (1) knowingly (2) possessed the controlled substance (3) with the intent to distribute it. United States v. Villarreal, 324 F.3d 319, 324 (5th Cir. 2003). A conviction for the crime of importation of a controlled substance requires proof that the defendant knowingly played a role in bringing the controlled substance from a foreign country into the United States. United States v. Diaz-Carreon, 915 F.2d 951, 953 (5th Cir. 1990). Thus, for either offense, the government must demonstrate that Garza had knowledge that the cocaine was hidden in the van he was driving.

Knowledge of the presence of a controlled substance may generally be inferred from the exercise of control over the vehicle in which the illegal substance is concealed. United

5

States v. Richardson, 848 F.2d 509, 513 (5th Cir. 1988). Where the contraband is concealed in a manner not clearly visible or readily accessible to the defendant, however, that inference may not be made, because of the possibility that another party was using the defendant as an unwitting carrier. Diaz-Carreon, 915 F.2d at 954. In such a situation, proof of knowledge requires "other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." United States v. Anchondo-Sandoval, 910 F.2d 1234, 1236 (5th Cir. 1990).

This court has repeatedly held that inconsistent or implausible statements by the defendant are strong evidence of a defendant's guilty knowledge. See, e.g., United States v. Casilla, 20 F.3d 600, 606 (5th Cir. 1994); United States v. Gibson, 963 F.2d 708, 711 (5th Cir. 1992); Diaz-Carreon, 915 F.2d at 954-55; Anchondo-Sandoval, 910 F.2d at 1237. We have also stated that the value of the drugs being transported may be probative of knowledge, for it is unlikely that a person not part of the smuggling scheme would be entrusted with such a valuable cargo. See, e.g., Villarreal, 324 F.3d at 324; United States v. Garcia-Flores, 246 F.3d 451, 455 (5th Cir. 2001).

Applying this precedent, it is clear that there is sufficient circumstantial evidence to support the jury's conclusion that Garza was knowingly in possession of cocaine. First, there were numerous inconsistencies in Garza's statements

6

to customs inspectors. Garza stated first that the owner of the van was named Luis Rodriguez, then Luis Flores. He claimed that the owner was his brother-in-law but later stated that the owner was his friend. Garza claimed initially that he had possessed the van for two weeks, and had been doing mechanical work on it. Later, however, Garza stated that he had just taken possession of the van that night, after his friend asked him to drive it back into the United States. Garza declared first that the purpose of his trip to Mexico was to buy liquor and tacos, then added that he had also met "some friends" there, and finally claimed that he and a single friend had been drinking in the United States and had decided to continue drinking in Mexico.

A number of Garza's statements were also arguably implausible. Certainly, the claim that Garza's friend handed over his van for Garza to drive back to the United States strains the bounds of plausibility. Moreover, extrinsic evidence introduced at trial undermined Garza's final account. A Texas state police officer testified that he stopped Garza at 8:55 p.m. on the night in question for driving a vehicle with a defective tail light, and that Garza showed no signs of intoxication. This evidence, placing Garza unintoxicated in Texas at roughly 9 p.m., casts doubt on Garza's claim that "he had been drinking earlier in the day" in Texas, before he and his friend decided to go to Mexico to drink, which they did "for a while" before returning to Texas.

7

Additionally, the value of the contraband (estimated to be at least $88,500) was sufficiently high to permit the jury to infer that the contraband would not have been placed in Garza's possession had he not been part of the smuggling scheme. <u>See Villarreal</u>, 324 F.3d at 324. "We do not consider each piece of potential evidence separately, rather we review the evidence as a whole to determine its sufficiency." <u>Garza</u>, 990 F.2d at 175. Taken as a whole, the evidence is more than sufficient to allow a reasonable jury to conclude that Garza had knowledge that the contraband was in the van he was driving.

**B.    Quantity of Cocaine in Van**

Garza claims that law enforcement agents took samples from only one of the ten packages of white powder found in Garza's van. Garza therefore argues that the DEA laboratory's conclusion that these samples contained cocaine is insufficient to prove beyond a reasonable doubt that the remaining packages contained cocaine. We need not decide, however, whether testing samples from one out of ten packages is sufficient, because there is strong evidence that the samples were taken from three out of the ten packages.

Garza appears to rely on sections of testimony by Customs Special Agent Michael Warner ("Warner") where he stated that he unwrapped the largest package of white powder and then sent three samples to the laboratory. From this testimony, one could infer

8

that Warner took all three samples from the single package that he unwrapped. In other testimony, however, Warner stated that he sent three of the packages to the laboratory, leaving seven behind. Kiana Hamlet, the DEA chemist who examined the samples sent by Warner, stated that she received:

> two DEA heat-sealed evidence envelopes. One heat-sealed evidence envelope contained the loose white powder with the wrappings. And there was another DEA heat-sealed evidence envelope that contained two bricks that were fully wrapped.

This testimony implies that Warner took one sample from the package he had opened and sent two unopened packages as the other two samples. The jury was entitled to credit the testimony indicating that samples were taken from three, rather than one, of the ten packages. See United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982).

We have previously stated that "[r]andom sampling is generally accepted as a method of identifying the entire substance whose quantity has been measured." United States v. Fitzgerald, 89 F.3d 218, 223 (5th Cir. 1996). In Fitzgerald, we concluded that tests revealing that five of sixty-three "rocks" consisted of cocaine base were sufficient evidence that the entire quantity was cocaine base. Id. We now hold that, in the absence of evidence to the contrary, tests revealing that three of ten packages contained cocaine are sufficient to prove that

9

all ten packages contained cocaine.[2]

## C.   Admission of Receipt into Evidence

Garza objects to the admission into evidence of a receipt from an Eagle Pass Auto Zone, stamped with a date of February 7, 2004, and a time of 5:44 p.m. This receipt was introduced as part of the government's efforts to establish a time line of Garza's activities on February 7, 2004. Customs Special Agent Mark Atchley ("Atchley") testified that he found the receipt either with Garza's personal effects or in the glove box of the van. Garza argues that because Atchley could not say with certainty that he found the receipt on Garza's person, the receipt could have been located in the van and could have been placed there by a prior driver. If the receipt was merely in the van, Garza argues, "it had no evidentiary significance." Garza therefore claims that the district court erred by allowing the admission of irrelevant and confusing evidence.

The general rule for admissibility, to which there are no doubt a multitude of exceptions, is that all relevant evidence is admissible. FED. R. EVID. 402. "Relevant evidence" is defined by Federal Rule of Evidence 401 as "evidence having any tendency to

_____

[2] We note that the jury did not need to conclude that each of the ten packages contained cocaine to convict Garza. Garza was charged with importation of and possession of with intent to distribute more than five kilograms of a substance containing cocaine. The total weight of the white powder found in the van was 8.85 kilograms, well over the necessary five kilograms.

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Contrary to Garza's contention, the receipt in question satisfies this standard, for it tends to make Garza's presence in Eagle Pass at 5:44 p.m. more probable, even if it does not establish that fact definitively. Placing Garza at Eagle Pass at 5:44 p.m. helps the jury to create a time line for Garza's movements that evening to compare with Garza's own account of his activities.

Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Garza appears to argue that the receipt created a danger of confusion that substantially outweighed its relevance. It is unlikely, however, that the jury would have been confused by the receipt, especially since Garza had an opportunity to question Atchley regarding its location when Atchley found it.

Even if the district court had erred in admitting the Auto Zone receipt into evidence, such error would be harmless. See United States v. Buck, 324 F.3d 786, 790 (5th Cir. 2003) ("If the court errs in its evidentiary ruling, the error can be excused if it was harmless . . . . A nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict."). While helpful in

11

establishing a time line of Garza's movements, the receipt is far from the only piece of evidence tending to undermine Garza's account (or accounts). More significant is the testimony of the Texas state police officer that Garza was stopped in Texas at 8:55 p.m. and appeared sober. Moreover, the multiple inconsistencies and implausibilities of Garza's stories provided sufficient basis, even in the absence of any extrinsic evidence regarding Garza's whereabouts, for the jury to conclude beyond a reasonable doubt that Garza was in fact aware of the cocaine in the van.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM Garza's conviction.

AFFIRMED.