United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 27, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 05-41473

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**IRMA SALAZAR,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Southern District of Texas
(5:04-CR-2245-ALL)**

Before SMITH, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Convicted for bulk-cash smuggling and evading a currency-reporting requirement, Irma Salazar claims:  evidence was erroneously admitted; and the evidence is *not* sufficient to support the jury verdict.  **AFFIRMED.**

I.

Salazar was stopped by a Border Patrol Inspector while driving a pickup truck into Mexico on the Lincoln-Juarez Bridge.  As is customary, the Inspector asked if she was transporting firearms,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ammunition, or over $10,000 in cash, currency, or money orders out of the United States. She responded in the negative.

The Inspector then looked at the gas-tank area of the vehicle's undercarriage, where he observed unusual conditions. As a result, he referred Salazar's vehicle to the secondary inspection area. There, the Inspector inserted a fiber-optic scope into the gas tank. Using the scope, he and another Inspector saw rust and welding marks, which they agreed indicated something was in the gas tank. Salazar did *not* inquire what the Inspectors were doing, which one testified as being unusual in his experience. In response to questioning, Salazar stated she had *not* had any repairs done to the vehicle and was traveling from Chicago, Illinois, to Guadalajara, Mexico.

Further inspection revealed a trap door in the gas tank, which concealed a compartment containing $418,300 in United States currency inside a plastic bag and bundled with rubber bands. One bundle was labeled with a note in Spanish: "Look, please deliver ... to my lady [or wife]". The installation of the compartment caused the gas tank's capacity to be reduced by approximately half.

Salazar was charged with: transporting monetary instruments of more than $10,000 outside the United States from a place within, in violation of 31 U.S.C. § 5332(a) and 18 U.S.C. § 2; and evading a currency reporting requirement, in violation of 31 U.S.C. §§ 5316(a)(1)(B), 5322(a), and 18 U.S.C. § 2. A jury found her guilty

2

on both counts.  She was sentenced, *inter alia*, to 30 months' imprisonment for each count, to be served concurrently.

## II.

The challenges to evidentiary admissibility and sufficiency are addressed in turn.  Salazar fails to show:  the admission of evidence, based on a calculation she claims is arbitrary, was reversible plain error; and the evidence was insufficient to prove, beyond a reasonable doubt, that she knew the currency was concealed in the vehicle.

## A.

At trial, an Immigration and Customs Enforcement Agent, who had interviewed Salazar post-arrest about her trip from Illinois, testified regarding the increased number of fuel stops required due to the altered/reduced gas tank.  He relied on a related map, basing his calculations on gas mileage of 17.5 miles-per-gallon — the average of the unchallenged city and highway gas mileages for Salazar's vehicle.  The testimony was intended to support a reasonable inference that Salazar knew the vehicle's tank capacity had been altered/reduced.

Salazar contends the district court abused its discretion in allowing the Agent to rely on the 17.5 figure because it is arbitrary and does *not* reflect the largely highway nature of her route from Aurora, Illinois, to Laredo, Texas.  She maintains she objected to the figure at trial.  The Government counters:  Salazar

3

did *not* object to the use of the figure; and the district court did *not* err in admitting the testimony and map.

When the Agent testified, Salazar objected to his testimony regarding *where*, given the vehicle's reduced fuel capacity, she would be forced to stop, but did *not* object to the gas-mileage calculation upon which that testimony was based. It was *not* until the next day, after the Government had rested, and had then offered the map in evidence, that Salazar objected to the 17.5 miles-per-gallon figure. Salazar claimed it should have been 20 miles-per-gallon. Needless to say, this objection should have been made when the Agent testified the day before. Salazar did *not* present evidence. Therefore, the testimony had ended. She did *not* ask to re-open it.

As a result, our review is only for plain error. ***United States v. Thompson***, 454 F.3d 459, 464 (5th Cir.), *cert. denied*, 127 S. Ct. 602 (2006) (when no objection is made at trial, an evidentiary ruling is reviewed only for plain error). "To demonstrate plain error, [Salazar] must show that the district court committed an error that was clear or obvious and that affected [her] substantial rights." ***Id.*** Salazar fails to do so. (Therefore, we need *not* proceed to whether it would have been reversible error. ***Id.***)

The 17.5 figure was within the mileage range Salazar acknowledged as accurate for the vehicle. That a more precise

4

figure tailored to the route's percentage of urban and rural areas could have been used does *not* make the 17.5 figure erroneous. Moreover, even if the Agent's testimony had been based on the higher *highway* gas mileage, it would have resulted in just one fewer fuel stop being required — five instead of six. Furthermore, on cross-examination, the Agent acknowledged the 17.5 figure was chosen because it was the average of the city and highway gas mileages and *not* because it reflected the driving conditions from Aurora to Laredo.

B.

Salazar's having properly moved at trial for judgment of acquittal, her sufficiency challenge is "reviewed in the light most favorable to the verdict, inquiring only whether a rational juror could have found each element of the crime proven beyond a reasonable doubt". **United States v. Jennings**, 195 F.3d 795, 801 (5th Cir. 1999). "To support a conviction, the evidence need *not* exclude every hypothesis of innocence, so long as a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." **United States v. Diaz-Carreon**, 915 F.2d 951, 953-54 (5th Cir. 1990) (emphasis added). "'A jury is free to choose among reasonable constructions of the evidence.'" **Id.** at 954 (quoting **United States v. Bell**, 678 F.2d 547, 549 (Former 5th Cir. 1982) (en banc), *aff'd*, 462 U.S. 356 (1983)).

5

To obtain a conviction for bulk-cash smuggling, the Government had to prove Salazar,

> with the intent to evade a currency reporting requirement under [31 U.S.C. §] 5316, knowingly conceal[ed] more than $10,000 in currency or other monetary instruments on [her] person ... or in any conveyance ... and transport[ed] or transfer[red] or attempt[ed] to transport or transfer such currency or monetary instruments from a place within the United States to a place outside of the United States.

31 U.S.C. § 5332(a)(1).

To obtain a conviction for evading the currency-reporting requirement, the Government had to prove: (1) Salazar knowingly transported or was about to transport more than $10,000 in currency at one time from a place in the United States to a place outside it; (2) she knew she had a legal duty to file a report of the amount of currency transported; and (3) she knowingly failed to file the report, with intent to violate the law. Fifth Circuit Pattern Jury Instructions (Criminal) § 2.98 (2001); 31 U.S.C. § 5316; *see also* **United States v. Berisha**, 925 F.2d 791, 795 (5th Cir. 1991) (To establish guilt under § 5316(a), "the government must show that the defendant had actual knowledge of the currency reporting requirement and voluntarily and intentionally violated that known legal duty".).

Salazar does *not* dispute either that more than $10,000 in currency was found in a vehicle she owned and was driving or that she knew of the reporting requirement. Rather, she contends only

6

that the Government's evidence could *not* have led a reasonable jury to find, beyond a reasonable doubt, that she knew the currency was in the vehicle, and thereby knowingly concealed, transported, and failed to report the currency as required by 31 U.S.C. §§ 5316(a) and 5332(a)(1).

Although a jury "'may infer knowledge of the presence of contraband from the exercise of control over the vehicle in which it is concealed[,] ... additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge is required'" when the contraband is in a hidden compartment in the vehicle. *United States v. Gamez-Gonzalez*, 319 F.3d 695, 698 (5th Cir. 2003) (quoting *United States v. Jones*, 185 F.3d 459, 464 (5th Cir. 1999)). Possible examples of such evidence are conflicting statements to law enforcement, an implausible story, possession of large amounts of cash, alteration of the vehicle, dramatically reduced fuel capacity, and a calm or indifferent demeanor during the dismantling of the gas tank. *See United States v. Martinez-Lugo*, 411 F.3d 597, 599 (5th Cir.), *cert. denied*, 126 S. Ct. 464 (2005); *United States v. Resio-Trejo*, 45 F.3d 907, 913 (5th Cir. 1995).

The circumstantial evidence, viewed in the requisite light most favorable to the verdict, was sufficient for a jury to find, beyond a reasonable doubt, that Salazar knew the currency was concealed in her vehicle's gas tank. Her knowledge was supported

7

by: her inconsistent statements to law enforcement regarding recent repairs made to the vehicle by her brother-in-law; her taking the vehicle to her brother-in-law for repairs, rather than a dealer when it was under warranty; the vehicle's decreased fuel capacity, resulting from installation of the compartment; her purchase of the vehicle from her sister (whose husband had been arrested for bringing cocaine into the United States in a vehicle's gas tank) in small monthly payments, when the sister allegedly sold the vehicle because she needed money; the lack of explanation for the vehicle's accumulation of almost 20,000 miles in fewer than four months; her failure to question the insertion of the fiber-optic scope into the gas tank; the value of the currency; and the note attached to it.

## III.

For the foregoing reasons, the judgment is

***AFFIRMED.***