# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-41547

United States Court of Appeals
Fifth Circuit

**FILED**

March 1, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

HECTOR FELICIANO LOPEZ-MONZON,

      Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Hector Feliciano Lopez-Monzon appeals from his convictions for possessing with intent to distribute 500 grams or more of methamphetamine and importing 500 grams or more of methamphetamine. He challenges the sufficiency of the evidence only as to the knowledge element of his convictions. For the reasons set forth below, we AFFIRM the judgment of the district court.

I

Lopez-Monzon, accompanied by Luis Fernando Rivera-De Leon, brought two tractor-trailers to Hotel Pena in Mexico, located near the United States border. Lopez-Monzon hired Juan Buentello-Garcia and Santiago Guadiana, freelance truck drivers, to drive the tractor-trailers into the United States. On December 26, 2014, Buentello-Garcia drove the first tractor-trailer—a white

No. 15-41547

Freightliner with a car hauler ("Freightliner")—with instructions to leave it at Transmigrante Mireya, a business located just inside the United States border. Guadiana did not drive the second tractor-trailer into the United States because it had a mechanical problem.

Buentello-Garcia entered the United States at the Los Indios, Texas port of entry. During an inspection by U.S. Customs and Border Patrol ("CBP"), liquid methamphetamine was discovered in the Freightliner's passenger-side fuel tank. Buentello-Garcia was arrested, and in his interview he asserted that he was unaware that the fuel tank contained methamphetamine. A specialist later calculated that a total of 200.3 kilograms of methamphetamine hydrochloride had been dissolved in the 100-gallon fuel tank, resulting in 411.4 kilograms of a substance containing methamphetamine. That amount of methamphetamine was worth up to $3 million in Houston, Texas. When Guadiana learned of Buentello-Garcia's arrest, he refused to drive the second tractor-trailer into the United States.

The next day, Lopez-Monzon and De Leon entered Texas on foot at the Los Indios Bridge port of entry. Later that day, at a gas station near the port of entry, Lopez-Monzon approached CBP Agent Jaime Vidal about the Freightliner. Lopez-Monzon identified himself as the owner of the Freightliner. Agent Vidal called for backup and escorted Lopez-Monzon and De Leon to the customs area.

Homeland Security Investigations Agent Angelico Santiago interviewed Lopez-Monzon and De Leon. Lopez-Monzon was nervous and anxious during the interview. Lopez-Monzon told Agent Santiago that he owned the Freightliner, and that he had bought the Freightliner with a man named Ruben "four to five months" earlier. He asserted that he did not know about the methamphetamine in the fuel tank, and that "if someone had put something in the gas tank, it would have been Ruben."

No. 15-41547

Lopez-Monzon also told Agent Santiago that he and De Leon traveled together from Guatemala. He said that De Leon drove the Freightliner, and that Lopez-Monzon "follow[ed]" in a Ford F-150 pickup truck. Lopez-Monzon admitted that "he noticed that one of the tanks was not functioning properly" but told Agent Santiago that the defective fuel tank "did not bother him." Lopez-Monzon explained that "he thought that the tank was full and the fuel inside was left there by . . . the previous owner."

Lopez-Monzon and Buentello-Garcia were charged with four counts: (1) conspiring to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) ("Count One"); (2) possessing with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2 ("Count Two"); (3) conspiring to import 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 963, 952(a) and 960(b)(1) ("Count Three"); and (4) importing 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 952(a), and 960(b)(1), and 18 U.S.C. § 2 ("Count Four"). The government dropped the charges against Buentello-Garcia after further investigation, and he was instead considered a material witness. Lopez-Monzon pleaded not guilty to all counts.

The government presented numerous exhibits and extensive testimony during a three-day jury trial. Lopez-Monzon moved for a judgment of acquittal at the end of the government's case in chief, and again at the close of all evidence. *See* Fed. R. Crim. P. 29(a). The district court denied those motions. The jury found Lopez-Monzon guilty of Counts Two and Four and not guilty of Counts One and Three. Lopez-Monzon again moved for a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). The district court again denied his motion.

The district court sentenced Lopez-Monzon to 292 months in prison and five years of supervised release. Lopez-Monzon timely appealed. He challenges

No. 15-41547

the sufficiency of the evidence only as to the knowledge element of his convictions.

II

This court reviews *de novo* a district court's denial of a post-trial motion for a judgment of acquittal. *United States v. Rojas Alvarez*, 451 F.3d 320, 326 (5th Cir. 2006).

III

"A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (quoting *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)). This court "owe[s] great deference" to the jury's verdict. *United States v. Gray*, 96 F.3d 769, 772 (5th Cir. 1996). In deciding the sufficiency of the evidence, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This court must assume that the evidence offered by the prosecution is true, *Rojas Alvarez*, 451 F.3d at 326, and weigh the evidence "in a light most deferential to the verdict rendered by the jury." *Lucio*, 428 F.3d at 522. To uphold the conviction, "the evidence need not exclude every hypothesis of innocence." *United States v. Diaz-Carreon*, 915 F.2d 951, 953–54 (5th Cir. 1990). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio*, 428 F.3d at 522. "A jury is free to choose among reasonable constructions of the evidence." *Diaz-Carreon*, 915 F.2d at 954 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)). This court does not determine "whether the jury correctly determined guilt or innocence" but only "whether the jury made a rational decision." *Rojas Alvarez*, 451 F.3d at 326 (quoting *United States v. Lopez-Urbina*, 434 F.3d 750, 757 (5th Cir. 2005)).

No. 15-41547

To sustain a conviction for the crime of possession of a controlled substance with intent to distribute, the government must prove: "(1) knowledge, (2) possession, and (3) intent to distribute the controlled substance." *United States v. Patino-Prado*, 533 F.3d 304, 309 (5th Cir. 2008). To sustain a conviction for the crime of importation of a controlled substance, the government must prove: "(1) the defendant played a role in bringing a quantity of a controlled substance into the United States from outside of the country; (2) the defendant knew the substance was controlled; and (3) the defendant knew the substance would enter the United States." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999). Lopez-Monzon challenges only the knowledge element of his convictions, arguing that the government failed to prove that he knew methamphetamine was concealed in the fuel tank.

"The necessary knowledge and intent can be proved by circumstantial evidence." *United States v. Rodriguez*, 993 F.2d 1170, 1175 (5th Cir. 1993). "[K]nowledge of the presence of a controlled substance may be inferred from the exercise of control over a vehicle in which the illegal substance is concealed." *Id.* But where drugs are concealed in a hidden compartment, this court "also require[s] circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." *United States v. Shabazz*, 993 F.2d 431, 441 (5th Cir. 1993). Such circumstantial evidence may include evidence of "consciousness of guilt, conflicting statements, or an implausible account of events." *Rojas Alvarez*, 451 F.3d at 334 (citing *Rodriguez*, 993 F.2d at 1175). But this court has explicitly declined to limit the relevant circumstantial evidence to "a defendant's nervousness, implausible explanations, and inconsistent statements, or matters similar or analogous thereto." *United States v. Resio-Trejo*, 45 F.3d 907, 912 (5th Cir. 1995). Viewing the evidence as a whole, this court holds that the evidence is sufficient to support Lopez-Monzon's convictions.

No. 15-41547

A

"Inconsistent statements are inherently suspicious." *Diaz-Carreon*, 915 F.2d at 955. Such statements, whether inconsistent with previous statements or with other evidence, are circumstantial evidence of knowledge. *See Rodriguez*, 993 F.2d at 1176 (inconsistent statement where defendant denied knowledge of a vehicle owned by his sister when defendant "was observed unlocking and entering" that vehicle). A rational jury could credit the government's presentation of documentary and other testimonial evidence as true, and infer that Lopez-Monzon's statements to Agent Santiago were inconsistent with Lopez-Monzon's understanding of what actually happened. In other words, a rational jury could infer that Lopez-Monzon attempted to mislead Agent Santiago—and such attempts to mislead certainly present circumstantial evidence of "consciousness of guilt." *Rojas Alvarez*, 451 F.3d at 334.

The government presented evidence from which a rational jury could conclude that Lopez-Monzon omitted or changed details regarding his purchase of the Freightliner in his interview with Agent Santiago. Lopez-Monzon told Agent Santiago that he was the owner of the Freightliner, and that he had bought the Freightliner with a man named Ruben "four to five months" earlier. But Lopez-Monzon's statements about his purchase and possession of the Freightliner were inconsistent with invoices and money orders found in his luggage—and the government presented evidence that those documents were themselves falsified. Lopez-Monzon contends that "the individual who sold the vehicle to Lopez-Monzon furnished him with a deceptive sales receipt." Although Lopez-Monzon is correct that the government presented no direct evidence that Lopez-Monzon knew that the invoices were falsified, that is not the relevant inquiry. Even if the jury found that Lopez-Monzon thought the invoices were entirely accurate, *his statements*

6

to Agent Santiago regarding the timing, price, purchaser, and location of the sale were inconsistent with the invoices he possessed and allegedly thought to be accurate.

The government also presented evidence that Lopez-Monzon's statements to Agent Santiago about his travel to Guatemala were inconsistent with what actually happened. Lopez-Monzon told Agent Santiago that he and De Leon traveled together, and that De Leon drove the Freightliner and Lopez-Monzon "follow[ed]" in a Ford F-150 pickup truck. But according to the exit stamps in Lopez-Monzon's and De Leon's passports, Lopez-Monzon actually departed Guatemala a day *earlier* than De Leon. Lopez-Monzon failed to provide an explanation to Agent Santiago when asked about the discrepancy. He now contends that "the only logical inference . . . is that Lopez-Monzon entered Mexico first, waited for his traveling companion to cross the border the next day, and then the two men continued the rest of their travels across Mexico together." Even accepting Lopez-Monzon's explanation on appeal, that "logical inference" is still inconsistent with Lopez-Monzon's statement to Agent Santiago that he "follow[ed]" De Leon from Guatemala and through the first part of their trip through Mexico. A rational jury could infer that Lopez-Monzon attempted to mislead Agent Santiago regarding his travel from Guatemala.

The government also presented evidence that Lopez-Monzon omitted mention of a second tractor-trailer in his interview with Agent Santiago. Guadiana and Buentello-Garcia testified that Lopez-Monzon brought *two* tractor-trailers to Hotel Pena, and that he hired them to drive both tractor-trailers into the United States. Guadiana testified that people he believed to be members of the Mexican Mafia retrieved the second tractor-trailer from the parking lot of Hotel Pena after Lopez-Monzon's arrest. In addition to the testimony of Guadiana and Buentello-Garcia, the government introduced

evidence that Lopez-Monzon's company had two insurance policies. De Leon was insured to drive the seized Freightliner, and Lopez-Monzon was insured to drive a second tractor-trailer. The insurance policies began and ended on the same date. A rational jury could infer from this evidence that Lopez-Monzon told Agent Santiago that he followed De Leon in a pickup truck because he did not want to admit the existence of the second tractor-trailer.

B

An "implausible account provides persuasive circumstantial evidence of the defendant's consciousness of guilt." *Diaz-Carreon*, 915 F.2d at 955. A rational jury may infer from "[a]n implausible account of exculpatory events . . . that the defendant desires to obscure his criminal responsibility." *Id*. The government presented evidence from which a rational jury could infer that Lopez-Monzon attempted to hide his knowledge of the methamphetamine from Agent Santiago by giving an implausible account of the defective fuel tank and attempting to blame Ruben for the presence of the methamphetamine.

Agent Santiago testified that Lopez-Monzon told him that "he noticed that one of the tanks was not functioning properly" but that it "did not bother him." According to Agent Santiago, Lopez-Monzon stated that "he thought that the tank was full and the fuel inside was left there by . . . the previous owner." Lopez-Monzon also told Agent Santiago that he purchased the tractor-trailer "four to five months" earlier. A rational jury could have concluded that Lopez-Monzon's statement—that it "did not bother him" that a fuel tank containing 100 gallons of valuable fuel was defective on a trip from Guatemala to the United States border—was implausible. Again, Lopez-Monzon admitted that he *knew* that the fuel tank was not "functioning properly." A rational jury could infer, given the totality of the circumstances, that Lopez-Monzon took advantage of the defect to conceal the methamphetamine and import it into the United States.

No. 15-41547

Lopez-Monzon also told Agent Santiago that "if someone had put something inside the gas tank, it would have been Ruben." Lopez-Monzon stated that Ruben owned a dealership in Guatemala and that they purchased the tractor-trailer together. But Lopez-Monzon failed to relate any other information about Ruben. Agent Santiago asked for additional information, but Lopez-Monzon did not provide even a surname. A rational jury could infer that Lopez-Monzon's implausible statements regarding Ruben were an attempt to deflect blame from himself.

C

"[T]he value of the drug being transported" is "[o]ne example of circumstantial evidence which may be probative of knowledge." *United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003). A particularly high value of drugs provides circumstantial evidence of knowledge. *See Rodriguez*, 993 F.2d at 1176; *see also United States v. Garcia-Flores*, 246 F.3d 451, 455 (5th Cir. 2001) (holding that "quantity of drugs" is one factor to consider in determining sufficiency of evidence for requisite knowledge element). The government presented evidence that the fuel tank of the Freightliner contained approximately 100 gallons of liquid methamphetamine, that the liquid contained 200.3 kilograms of actual methamphetamine, and that this amount of methamphetamine would be worth up to $3 million in the United States. The high volume and value of the drugs are not dispositive, but it does present circumstantial evidence that Lopez-Monzon knew about the methamphetamine. A rational jury could infer that whoever put the drug in the fuel tank would not have done so without Lopez-Monzon's knowledge, given his ownership and control of the Freightliner throughout the trip.

D

Agent Santiago testified at trial that Lopez-Monzon was "[v]ery nervous [and] anxious" during the interview. "Nervous behavior . . . frequently

constitutes persuasive evidence of guilty knowledge." *Diaz-Carreon*, 915 F.2d at 954. Lopez-Monzon argues, and the government concedes, that nervousness alone is insufficient to support a finding of the requisite knowledge. *See Diaz-Carreon*, 915 F.2d at 954 ("In the absence of facts which suggest that the defendant's nervousness or anxiety derives from an underlying consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty knowledge"). But given the totality of the circumstances, a rational jury could infer that Lopez-Monzon's nervousness was additional circumstantial evidence of his consciousness of guilt.

IV

When the jury rendered its verdict of guilty, it determined beyond reasonable doubt that Lopez-Monzon had the requisite knowledge to support his convictions for possessing methamphetamine with the intent to distribute and importing methamphetamine. The jury's verdict is supported by evidence that Lopez-Monzon: owned and controlled the tractor-trailer in which the methamphetamine was found; gave statements to Agent Santiago inconsistent with the evidence; gave implausible explanations regarding the fuel tank and the source of the methamphetamine; and was nervous during his interview. Given this evidence, as well as the high amount and value of the methamphetamine hidden in Lopez-Monzon's tractor-trailer, a rational jury could find beyond reasonable doubt that Lopez-Monzon knew about the methamphetamine. Considering the totality of the circumstances, we AFFIRM the judgment of the district court.