# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-50338

United States Court of Appeals
Fifth Circuit

**FILED**
July 23, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

GUILLERMO RODRIGUEZ-SANCHEZ,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:16-CR-474-1

Before JOLLY, SOUTHWICK, and WILLETT, Circuit Judges.

PER CURIAM:*

      Guillermo Rodriguez-Sanchez ("Rodriguez") appeals his jury conviction for knowingly, intentionally, and unlawfully importing cocaine and heroin into the United States from Mexico in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2). He argues we should overturn his conviction because of (1) insufficient evidence, (2) improper expert testimony, (3) improper closing remarks by the prosecutor, and (4) the district court's refusal to give an

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50338

adverse-inference spoliation jury instruction. For the reasons that follow, we affirm Rodriguez's conviction.

I.

On March 14, 2016, Rodriguez traveled 13 hours in his Toyota Tundra truck from his home in Mexico City, Mexico, to Piedras Negras, Mexico, for his work as a bank auditor. He stayed in Piedras Negras for about two days, visiting with his sister and her family while his truck stayed parked on a public street. From there, he planned to go to an outlet mall in San Marcos, Texas, so he headed towards the Eagle Pass, Texas Port of Entry.

On March 16, 2016, at Eagle Pass, officers inspected Rodriguez's truck. They ultimately found five packages hidden in the engine's air-intake manifold. Those packages contained cocaine and heroin worth roughly $200,000. In the passenger compartment of the truck, officers found a pair of boots, a small piece of luggage, a single key in the ignition, and a manila folder containing a picture of a forklift and a Dallas address; otherwise, the truck appeared noticeably clean.

Rodriguez explained to authorities that he was the only one who had driven the truck, he was single, and he kept only his truck key—and not a house key—on his person because he lived with his parents so someone was always around to let him in his house. When asked about the drugs, Rodriguez calmly denied any knowledge. As for the contents of the manila folder, Rodriguez said he had no plans to go to the Dallas address, but intended to price forklifts for a friend somewhere along the way to and from San Marcos. Rodriguez also told officers that he had previously crossed the border in September 2015 in a Toyota Sequoia and had returned to Mexico in that vehicle, where he later sold it.

The government charged Rodriguez with knowingly, intentionally, and unlawfully importing cocaine and heroin into the United States from Mexico.

No. 17-50338

After a two-day trial, Rodriguez unsuccessfully moved for acquittal at the close of evidence, and a jury convicted Rodriguez on both counts. He now appeals that conviction.

II.

Rodriguez first contends that the government's evidence was insufficient for any reasonable jury to convict him of knowingly importing controlled substances. To sustain Rodriguez's conviction, the government must prove, beyond a reasonable doubt: "(1) [he] played a role in bringing a quantity of a controlled substance into the United States from outside of the country; (2) [he] knew the substance was controlled; and (3) [he] knew the substance would enter the United States." *United States v. Lopez-Monzon*, 850 F.3d 202, 206 (5th Cir. 2017). Rodriguez challenges only the third element. Because Rodriguez unsuccessfully moved for a judgment of acquittal at trial, we review the evidence de novo. *Id.*

"Our review of the sufficiency of the evidence is highly deferential to the verdict." *United States v. Gulley*, 526 F.3d 809, 816 (5th Cir. 2008). We do not re-weigh the evidence, but instead ask "whether the evidence, when reviewed in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational fact finder to find every element of the offense beyond a reasonable doubt." *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002).

Although Rodriguez was driving his truck when authorities discovered the drugs in it, his control over the truck alone is not enough for a jury to infer that he knew about the drugs. We require "additional evidence because it is at least a fair assumption that a third party might have concealed the controlled substance in the [truck] with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999).

3

No. 17-50338

Two items of evidence rebut the possibility that a third party concealed the drugs without Rodriguez's knowledge.  First, the government presented evidence of the "high value" of the hidden drugs—approximately $200,000—to show that only someone clued into the scheme would have been trusted with the drugs' transportation.  Rodriguez's counterargument that the drugs' value allows a jury to infer knowledge only where such value is much higher than $200,000 is unavailing.  *See, e.g.*, *United States v. Amador-Juarez*, 399 F. App'x 882, 883 (5th Cir. 2010) (holding that, combined with other evidence, "the value of the [drugs], between $52,500 and $140,000, rendered it reasonable for the jury to deduce that [the defendant] would not have been entrusted with that extremely valuable cargo if he was not part of the trafficking scheme").  The government's evidence is probative of knowledge.  *See United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003).

Second, the government presented testimony from Agent Goldberg that Rodriguez explained that his plan was to simply "find a place" to stop along the way to and from San Marcos to price forklifts for his friend.  According to the government, this unpredictable route and erratic stopping schedule would make it nearly impossible for a nefarious third party to later track down the truck to retrieve the drugs without Rodriguez's knowledge.  *See United States v. Walczak*, 85 F. App'x 986, 987 (5th Cir. 2004) (holding a jury could infer knowledge where the defendant's story "offered no reasonable time or opportunity for the allegedly unknown smugglers to retrieve the marijuana from his truck within the United States").  We hold that here a reasonable juror could agree that Rodriguez's story that a third party hid the drugs in his car without his knowledge was a ruse.

The government also adduced additional circumstantial evidence to support its contention that Rodriguez knew he was carrying drugs in his truck.  The government points to Rodriguez's implausible explanations regarding his

trip, which "provide[ ] persuasive circumstantial evidence of [his] consciousness of guilt." *United States v. Diaz-Carreon*, 915 F.2d 951, 955 (5th Cir. 1990). The government's first implausibility characterization is for Rodriguez's initial explanation for his trip into the United States. According to the government, upon arriving at the checkpoint, Rodriguez told the primary-inspection officer that he was traveling to the outlet mall in San Marcos, which is a three-hour drive from the Eagle Pass Port of Entry, to return a single pair of boots. The government acknowledges, though, that Rodriguez also explained to the secondary-inspection officers that he was traveling to the outlet mall to return the boots and for additional shopping.[1] The government does not argue that Rodriguez's later explanation was implausible or that the two explanations are inconsistent.

We do not resolve whether, in general, traveling three hours into the United States from Mexico to return boots at a large outlet mall is implausible, or whether that explanation was inconsistent with his later, slightly longer list of planned activities.[2] The government did not seek to discredit that Rodriguez

---

[1] One officer testified that it was his understanding that Rodriguez's reason for traveling to the United States was "[t]o go shopping and return his boots in San Marcos." Another officer testified that when he asked Rodriguez what the purpose of his trip was, Rodriguez "indicated that he was going to San Marcos to go do some shopping and return some boots[.]"

[2] The record and briefing are inconsistent on this issue. The government asked the primary-inspection officer to summarize his first conversation with Rodriguez. The officer replied, "I just asked him where he's going. He told me he was going to San Marcos. I asked for what. He said to go exchange some boots that he had purchased on, I believe it was a Black Friday sale." On cross examination, though, defense counsel asked the officer whether it was correct that Rodriguez told him that he was going to the San Marcos outlets "to do some shopping and return some boots." The officer replied "Yes." Rodriguez testified that at the primary station, his stated purpose for going to San Marcos was to shop and to exchange boots. But in an earlier response to counsel asking why he was going to San Marcos, Rodriguez stated "[e]xchange – exchange some – a pair of boots." And like his testimony, Rodriguez's briefing is also inconsistent. On one hand, Rodriguez asserts that when the primary-station officer asked where he was going, he "explained that he was going to San Marcos to exchange some boots." On the other hand, Rodriguez contends that he told the officer "he was going to San Marcos to shop and exchange some boots."

purchased the boots at the San Marcos outlet mall. Nor did it question the legitimacy of the receipts from stores at the outlet mall that Rodriguez offered at trial. That Rodriguez purchased the boots at the outlet mall that he said was his destination and also provided receipts validating that he had previously traveled there is not obviously implausible.

Looking beyond the reason for the travel, though, we find Rodriguez did venture into implausible storytelling. In response to an agent's inquiry regarding the forklift photograph, Rodriguez explained that he planned to stop along the way to and from San Marcos to price similar forklifts for a friend; but he did not identify any specific destination or a plan to locate such forklifts. And finally, Rodriguez said he carried only one key on his body because he lived with his parents and would simply call *every time* he needed to enter the shared residence.[3] We have held that jurors may infer a defendant's guilty knowledge in the face of "less-than-credible explanation[s]" such as these. *Id.*

The government also presented evidence that Rodriguez gave inconsistent statements to authorities during questioning. "Such statements, whether inconsistent with previous statements or with other evidence, are circumstantial evidence of knowledge." *Lopez-Monzon*, 850 F.3d at 207. First, in September 2015, a Toyota Sequoia registered to Rodriguez crossed the border into the United States. During questioning, Rodriguez told authorities he had returned in that Sequoia to Mexico and later sold it there. But according to the government, there is no record that Sequoia re-entered Mexico. Instead, it was registered to another person in the United States five days after Rodriguez entered the United States in 2015. Second, Rodriguez

---

[3] That is, a jury could have reasonably disbelieved that Rodriguez's parents were available 24 hours a day, seven days a week, to let him into their house.

told authorities that he was not married, which is true, but his visa application shows him as married.

Although there is other evidence that the government argues tends to show knowledge, we stop with the evidence we have detailed thus far. Rodriguez attempts to undercut the government's case by, for example, offering hypothetical opportunities for a third party to hide the drugs in his truck without his knowledge, but his arguments amount only to an assertion that the jury should have accepted Rodriguez's position over the government's position. The jury chose to credit the government's evidence, which it was entitled to do. When viewing the foregoing evidence in the light most favorable to the government, as we must, we hold that a rational jury could have found beyond a reasonable doubt that Rodriguez knew he was transporting drugs.

### III.

Rodriguez also contends that the district court reversibly erred in admitting an expert opinion on the ultimate issue of knowledge. Under Federal Rule of Evidence 704(b), "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." Agent Morales's testimony violated this rule, according to Rodriguez, because it equated to his opinion that Rodriguez knew about the drugs.[4]

At the start, we set out the standard controlling our review of the district court's admission of Agent Morales's testimony. We review "preserved objections to evidentiary rulings for abuse of discretion, subject to the harmless error standard," and non-preserved evidentiary issues for plain error. *United States v. Valas*, 822 F.3d 228, 239–40 (5th Cir. 2016). When Agent Morales

---

[4] It is undisputed that Agent Morales, a group supervisor with eight years' experience investigating "narcotics activities," testified as an "expert on the narcotics trafficking operation."

offered the challenged testimony at trial, defense counsel objected—"Pretrial motion in limine regarding commenting on veracity of a . . . witness"—and an off-the-record bench conference followed before questioning resumed. The objection made no reference to Rule 704(b), under which Rodriguez now claims error. And the record is silent as to what counsel said at the bench. Because the record is devoid of any indication that the district judge had an opportunity to consider a Rule 704(b) objection in response to Agent Morales's testimony, we hold that plain-error review applies.[5]

Under plain error, Rodriguez must show "(1) error, (2) that is plain, and (3) that affected his substantial rights" to warrant the reversal of his conviction. *United States v. Montes-Salas*, 669 F.3d 240, 247 (5th Cir. 2012). And even if he succeeds in carrying that burden, "this court may exercise its discretion to correct the error only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* We now turn to apply that standard to the circumstances at hand.

Rodriguez contends that the district court erred in permitting Agent Morales to testify that (1) "most" of the drug couriers apprehended by Agent Morales carry only one key, so a lone key is "an indicator" to "start looking at [an individual] a little bit harder," which Agent Morales did when he discovered only one key in Rodriguez's truck and (2) Rodriguez was "trying to mislead" Agent Morales with his explanation for why he kept only his car key

---

[5] On this record, none of the motions in limine filed in advance of trial references opinion testimony under Rule 704(b). And although, during a pretrial conference, the district judge "caution[ed]" the government that its experts could "not give an opinion as to the defendant's state of mind," Rodriguez's objection referred to a motion in limine, and at that point in the pretrial conference, the court had "move[d] on" from motions in limine. In any event, Rodriguez's objection made no reference to that pretrial admonition from the district judge.

on his person.[6]   According to Rodriguez, these statements, taken together, amount to "impermissible drug courier testimony."[7]

A qualified narcotics agent such as Agent Morales "may testify about the significance of certain conduct or methods of operation unique to the drug business," but may not offer a drug-courier profile. *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 363 (5th Cir. 2010). "A drug courier profile is a compilation of characteristics used by law enforcement officers to identify individuals who might be involved in the trafficking of narcotics." *Id.* So "[a]lthough the Government may introduce evidence that the defendant exhibited the individual behaviors that make up a drug courier profile, the Government may not define the profile or suggest that the defendant's behavior in fact fit the profile" of a drug courier. *Id.* at 364.

We will assume without deciding that the court plainly erred in admitting Agent Morales's testimony describing one key as an "indicator" to identify drug couriers.   Under the third prong of plain-error review, "a defendant generally must show that the error was prejudicial.   Error is

---

[6] Agent Morales viewed Rodriguez's truck after Rodriguez had exited and the truck had been moved to the import lot.  At that time, Agent Morales "looked inside the cab area of the truck" and "saw one key in the ignition."  He later questioned Rodriguez in a conference room, specifically asking about the one key.

[7] Agent Morales testified:

[Agent Morales:] With all my experience in -- in dealing with loads that are apprehended at . . . the ports of entries, for some reason, most of them have one key. And that's an indicator to us, basically, they're -- you know, you start -- you start looking at it a little bit harder when you see there's one key, and everything's clean in the truck and there's no documents anywhere. And so when I saw the one key in the truck when I walked up, I kind of figured, okay, we got something -- we got something going on here.

. . . .

[Agent Morales:] [W]hen I got to the key, I could tell, you know, in my opinion, he was trying to mislead me by telling me, you know, his parents opened the house for him and stuff like that.

prejudicial if there is a reasonable probability that the result of the proceedings would have been different but for the error." *Montes-Salas*, 669 F.3d at 247. We hold that Agent Morales's testimony did not prejudice the fairness of Rodriguez's conviction because the conviction is supported by other strong, uncontested evidence to which we have earlier referred.

Specifically, the value of the drugs and Rodriguez's uncertain travel plans allowed a reasonable jury to reject Rodriguez's suggestion that a third party stashed the drugs in his truck without his knowledge. Further, the jury heard Rodriguez's dubious explanations and inconsistent statements. He had a picture of a forklift and a Dallas address for a forklift-sales business. He did not explain the Dallas address other than to say he did not intend to go there. He further explained, vis-à-vis the picture of the forklift, that part of his reason for coming to the United States was that he planned to find forklifts along the way, at some unspecific place, to price for an unspecified friend. Moreover, Rodriguez's statements regarding his previous trip into the United States were untruthful; he said he entered and exited the United States in a Sequoia in 2015, but the government has no record of that Sequoia, which was subsequently registered to another person in the United States, re-entering Mexico. Furthermore, his actual marital status, i.e. single, conflicted with his visa application showing him as married.

Viewing this evidence as a whole, we hold that there is no reasonable probability that Rodriguez's conviction was dependent upon Agent Morales's challenged "one key" testimony. *See Moreno*, 185 F.3d at 471–72 (holding that there was sufficient evidence to satisfy the knowledge element where the defendant gave inconsistent statements and implausible explanations "which could lead a reasonable trier of fact to doubt [her] credibility [which] likely vitiated the effect of any favorable evidence, including her testimony"); *United States v. Gibson*, 963 F.2d 708, 711 (5th Cir. 1992) (same).

No. 17-50338

IV.

Rodriguez next contends that the government made an improper reference to a fact not in evidence when, in closing argument, the government said that a blind mule—one who unknowingly transports drugs—"doesn't really exist." Because Rodriguez did not object to this closing statement at trial, we review for plain error. *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009).

Although "[w]e accord wide latitude to counsel during closing argument," *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007), "[a] prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008).

As explained supra, to demonstrate plain error, Rodriguez must show that the error is plain and that it affects his substantial rights. We will assume, only for purposes of this appeal, that the prosecutor's comment was plain error and directly turn to whether the closing remark affected Rodriguez's substantial rights. *See, e.g.*, *United States v. Rosenthal*, 805 F.3d 523, 534 (5th Cir. 2015). In doing so, we consider "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Thompson*, 482 F.3d at 785. Any prejudicial effect is "minimal at worst" where "(1) the prosecutor's putatively improper statements were based on and linked to evidence presented during the trial, and (2) the evidentiary basis for those statements was obvious to the jury." *Id.* at 786. The relevant portion of the government's challenged remark stated:

> He's a blind mule. They kept saying that. And that doesn't really
> exist. Is -- is that -- you all have heard from the defense counsel

asked our expert, Hey, we heard about this blind mule thingy. He said as long as he's been doing it, he's never seen it.

Viewed in context, it is clear the prosecutor explicitly linked his statement that blind mules do not "really exist" to Detective Duran's testimony offered at trial.[8] So the prejudicial effect in this case, if any, is negligible.

Turning to the remaining considerations, the court instructed the jury: "The questions, statements, objections, and arguments made by the lawyers are not evidence . . . . What the lawyers say is not binding on you." That instruction counters any potential prejudice that could have occurred from the government's allegedly improper remark. And as we have explained, there was sufficient circumstantial evidence outside this closing remark that tended to show Rodriguez knew the drugs were in his truck. Rodriguez has failed to demonstrate that the complained-of remark affected his substantial rights.

## V.

Finally, we get to Rodriguez's claim of spoliation: the "destruction or the significant and meaningful alteration" of evidence that a party has a duty to preserve. *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Here, there is an allegedly improper discarding of evidence. On June 21, 2016, upon Rodriguez's motion, the district court ordered Rodriguez's "2007 Toyota Tundra seized in this case be preserved in its unaltered state." Nevertheless, the United States Customs and Border Protection sold the truck at an auction on July 9, 2016, well before the criminal matter was resolved. As a result, Rodriguez asked the district court to give the jury an adverse-inference

---

[8] Detective Duran testified:

| [Defense Counsel:] | And sometimes the drug traffickers, or the narcos, they use blind mules, correct? |
|---|---|
| [Duran:] | In 11 and a half years, I can't say that I ever found someone or dealt with someone that didn't know. What I can't tell you -- I can't testify that I know at least of one person that was a blind mule. |

instruction, permitting the jury "to infer that the [truck] would have been unfavorable to the government." The district court declined, citing a lack of bad faith. We review that decision for an abuse of discretion. *Valas*, 822 F.3d at 239.

When confronted with a claim of spoliation, a court may give an adverse-inference instruction similar to the one Rodriguez requested. *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611–20 (S.D. Tex. 2010) (providing a detailed analysis of spoliation sanctions). But a showing of bad faith is required for such an instruction, even in the criminal context. *See, e.g.*, *Valas*, 822 F.3d at 239; *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000). "Bad faith, in the context of spoliation, generally means destruction *for the purpose* of hiding adverse evidence." *Guzman*, 804 F.3d at 713 (emphasis added) (addressing spoliation in civil context). Mere negligence is not enough. *Vick v. Texas Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).

Rodriguez contends bad faith exists here because Customs and Border Protection sold the truck in violation of court order and "[t]he government made no effort . . . to communicate the court's order to its case agent despite the potential for a forfeiture sale." But Rodriguez offers no evidence that would tend to show that Border Protection or the government acted, or failed to act, "for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713. Instead, Agent Morales, "the agent in charge of Rodriguez's investigation," testified that he had "no idea" the truck was to be preserved. And the government's lack of "effort" to communicate from counsel to case agent does not, in itself and without more, warrant an adverse-inference instruction. Because Rodriguez failed to show bad faith, we find no abuse of discretion.[9]

---

[9] We decline Rodriguez's invitation to consider whether a different bad-faith definition should be employed in the criminal context. It is enough to say that spoliation is defined as

No. 17-50338

VI.

In sum, Rodriguez has not demonstrated any reversible error in connection with his conviction. His conviction is

AFFIRMED.

---

the "intentional destruction, mutilation, alteration, or concealment of evidence," SPOLIATION, Black's Law Dictionary (10th ed. 2014), and here, there is no evidence of intent.

14