NOT DESIGNATED FOR PUBLICATION

No. 121.204

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL STEVEN MARTINEZ,
*Appellant*.


MEMORANDUM OPINION

Appeal from Finney District Court; ROBERT J. FREDERICK, judge. Opinion filed September 24, 2021. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Brian R. Sherwood*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., GARDNER and WARNER, JJ.


ATCHESON, J.: A jury sitting in Finney County District Court convicted Defendant Michael Martinez of possession of methamphetamine with the intent to distribute and several other crimes. On appeal, Martinez challenges that drug conviction on three grounds and the overall fairness of his trial on three other grounds. We find no bases for upsetting the guilty verdicts and, therefore, affirm the judgments of conviction and the resulting sentences.

1

Given the issues on appeal, we may sketch the salient facts with fairly broad strokes, recognizing the parties are familiar with the details outlined for the jurors during the three-day trial. Two Finney County Sheriff's officers were on routine patrol during the afternoon of November 10, 2017, in a residential area east of Garden City. They parked their patrol cars near what had been reported as a drug house. After seeing Monyai Lampkin at the front of the house, they drove around the block and returned as Lampkin came out of the house and got in an SUV. As the SUV drove away, one of the officers followed at a distance in what could be characterized as a low-speed, rolling surveillance of the vehicle.

The driver of the SUV, later identified as Martinez, made a series of seemingly random turns in the residential area in what the officer perceived to be an effort to shake the pursuit. At one point, the SUV pulled into the driveway of a house. As the officer drove by, Martinez and Lampkin got out and went to the front door. They told a resident of the home they were lost, asked for directions, and left. Contacted by law enforcement officers later, the resident provided a surveillance video of his encounter with Martinez and Lampkin. In the video, Martinez is wearing a stocking cap and a black jacket with a distinctive shoulder patch—a detail that momentarily turns significant in our narrative.

The Sheriff's officer resumed his rolling surveillance of the SUV as the second officer remained in the vicinity. Martinez then parked the SUV in an alleyway, and he and Lampkin ran from the vehicle through the residential area. The following officer began a foot pursuit of the two and requested assistance from other officers. As he fled, Martinez discarded his stocking cap, the black jacket, and his outer shirt. He and Lampkin split up as the officers closed in. Some of the officers nabbed Lampkin first, and others overtook Martinez shortly afterward. Martinez had hidden in the backseat of an unlocked car parked in a residential driveway.

Officers found the black jacket in the yard of another house on the route Martinez took as he ran. The residents of the house approached the officers and turned over a stocking cap they had found in the yard. The officers discovered a clear plastic bag containing what turned out to be about 111 grams of methamphetamine in a pocket of the jacket.

Shortly after his capture, Martinez spoke to law enforcement officers. He declined to talk about Lampkin. Although Martinez admitted that about 6 grams of marijuana investigators discovered in the SUV belonged to him, he disclaimed any connection to the methamphetamine found in the jacket. He suggested someone from the neighborhood might have stashed the drugs there.

The State charged Martinez with possession of methamphetamine with the intent to distribute, a severity level 1 drug felony violation of K.S.A. 2017 Supp. 21-5705; tampering with evidence, a severity level 8 felony violation of K.S.A. 2017 Supp. 21-5904(a)(2); criminal trespass, a misdemeanor violation of K.S.A. 2017 Supp. 21-5808; and possession of marijuana, a misdemeanor violation of K.S.A. 2017 Supp. 21-5706. During the trial in January 2019, law enforcement officers and residents from the area testified about their involvement in the surveillance, pursuit, and capture of Martinez and the identification and recovery of associated physical evidence. Pertinent to the issues on appeal, Detective Mike Tabor testified that based on his training and experience with drug cases, personal use quantities of methamphetamine are typically measured in fractions of a gram. He also told the jurors the comparatively large size of the individual methamphetamine crystals found in the jacket suggested they would be broken down for later sale.

Martinez testified in his own defense. He told the jurors he ran from the SUV because he had no driver's license and thought there was an outstanding warrant for his

3

arrest in Texas. Martinez again acknowledged the marijuana was his and denied he had anything to do with the methamphetamine. He intimated Lampkin might have put the drugs in the jacket after he laid it on a seat in the SUV.

The jury convicted Martinez on the four charges. The district court later sentenced Martinez to a controlling 194-month term of imprisonment on the methamphetamine conviction followed by a 36-month period of postrelease supervision. The district court imposed considerably shorter terms of incarceration on the other convictions to be served concurrent with each other and with the 194-month sentence. Martinez has duly appealed.

LEGAL ANALYSIS

As we have indicated, Martinez had asserted an array of issues on appeal. We first take up those directly challenging the methamphetamine conviction and then turn to the more general attacks on the overall fairness of the trial and the resulting guilty verdicts. We add facts as necessary to those targeted discussions.

• Martinez first contends K.S.A. 2020 Supp. 21-5705(e)(2) creates an unconstitutional presumption that possession of 3.5 grams or more of methamphetamine establishes intent to distribute. K.S.A. 2020 Supp. 21-5705(e)(2) ("there shall be a rebuttable presumption of intent to distribute if any person possesses . . . 3.5 grams or more of . . . methamphetamine"). This has become a recurrent issue of late for our court. See *State v. Reisinger*, No. 119,791, 2021 WL 2171093, at *6 (Kan. App. 2021) (unpublished opinion), *rev. denied* 313 Kan. ___(August 31, 2021); *State v. Slusser*, No. 121,460, 2020 WL 7636318, at *1-2 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* January 26, 2021. In *Slusser*, we observed:

"Presumptions favoring the State in criminal cases can be tricky creatures. See *Carella v. California*, 491 U.S. 263, 265, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989)

4

(mandatory presumption in jury instruction deprives criminal defendant of due process protections afforded under Fourteenth Amendment to United States Constitution); *Sandstrom v. Montana*, 442 U.S. 510, 523, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). Even a nonconclusive presumption bearing on criminal intent may be constitutionally suspect depending on how it has been presented to a jury. 442 U.S. at 524. Conversely, a jury properly may be instructed on reasonable inferences at least in some circumstances. See *Barnes v. United States*, 412 U.S. 837, 840-41, 93 S. Ct. 2357, 37 L. Ed. 2d 380 (1973) (instruction that jury may infer knowledge from defendant's unexplained possession of recently stolen property constitutionally permissible); *United States v. Harrison*, 585 F.3d 1155, 1159-60 (9th Cir. 2009) (instruction that jury may infer consciousness of guilt from flight constitutionally permissible)." 2020 WL 7636318, at *1.

Similarly, in *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 167, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979), the Court recognized that a rebuttable presumption may be constitutionally infirm if it is the sole basis the government uses in a given case to establish an element of a charged crime.

Here, however, whatever legal shortcomings there might be with K.S.A. 2020 Supp. 21-5705(e)(2) as a presumption of intent, they amount to debatable academic points and nothing more. The statutory presumption did not affect Martinez' trial. That's because the jury was never instructed on—and, therefore, could not have considered—the statutory presumption. Rather, the district court instructed the jury this way:

> "Under Kansas law, if you find the defendant possessed 3.5 grams or more of methamphetamine, you may infer that the defendant possessed with intent to distribute. You may consider the inference along with all the other evidence in the case. You may accept or reject it in determining whether the State has met the burden of proving the intent of the defendant. This burden never shifts to the defendant."

Apart from the introductory phrase, the instruction matches PIK Crim. 4th 57.022 word for word. The pattern instruction permits jurors to draw an inference that they may make

5

or not. An evidentiary inference hasn't anywhere near the evidentiary force of rebuttable presumption. Typically, a rebuttable presumption requires jurors to assume fact B to be true if evidence establishing fact A has been admitted. See K.S.A. 60-413 (defining evidentiary presumption). The presumption may be overcome if a party presents evidence disproving fact A. See K.S.A. 60-414; see also *Brown v. Vannoster*, No. 120,376, 2019 WL 5485149, at *4-5 (Kan. App. 2019) (unpublished opinion) (discussing evidentiary presumptions and inferences), *rev. denied* 312 Kan. 890 (2020). Conversely, jurors may draw an inference or not as they choose in exercising their role as fact-finders.

In this case, Detective Tabor provided expert testimony that a personal use quantity of methamphetamine commonly would be less than a gram and the physical appearance of the methamphetamine found in Martinez' coat indicated a commercial batch that literally had not yet been broken down for distribution. Martinez did not dispute that testimony. His defense rested on denying any knowing possession of the 111 grams of methamphetamine at all and not on whether it was for personal use rather than commercial distribution. Given that evidence, the instruction at most simply focused the jurors' attention on an entirely reasonable inference that could be drawn from Detective Tabor's undisputed testimony. In doing so, the instruction did highlight one aspect of the evidence presented to the jurors. But the instruction assiduously advised the jurors they could accept or reject the evidence, and the burden of proof never shifted to Martinez. The instruction did not compromise Martinez' basic right to a fair trial. See *State v. Cruz*, 297 Kan. 1048, 1075, 307 P.3d 199 (2013) ("As we have recognized for decades, '[a] defendant is entitled to a *fair* trial but not a perfect one[.]'") (quoting *State v. Bly*, 215 Kan. 168, 178, 523 P.2d 397 [1974]).

More to the point, however, Martinez does not attack the instruction. He challenges the propriety of the statutory presumption in K.S.A. 2020 Supp. 21-5705(e)(2). As we have explained, the jurors were never informed of that presumption

6

and could not have relied on it. So Martinez poses no more than a hypothetical question that, even if answered favorably to him, affords no basis for relief from the guilty verdict.

• Martinez next contends his conviction for possession of methamphetamine with the intent to distribute rests on impermissible inference stacking and, thus, unmoored speculation rather than facts grounded in the evidence. We disagree with Martinez' characterization of the case marshalled against him.

A guilty verdict cannot depend upon a series of entirely speculative suppositions offered to prove a specific material fact. Cf. *State v. Banks*, 306 Kan. 854, 860-61, 397 P.3d 1195 (2017) ("[I]t is permissible for the State to rely on multiple circumstances to support an inference of premeditation, so long as each circumstance has been proved, rather than presumed from another circumstance."). That's improper inference stacking. For example, the State could not argue a husband had a financial motive to murder his wife because he was debt-ridden and had recently taken out a life insurance policy on her without admitting evidence establishing the existence of both the debt and the insurance policy. See *State v. Tobin*, No. 114,216, 2017 WL 462161, at *4 (Kan. App. 2017) (unpublished opinion) (citing murdered spouse and unproven life insurance policy as example of impermissible inference stacking to establish motive). But we don't have pyramiding speculation proving essential components of the methamphetamine charge against Martinez.

The State had to prove two key factual elements: (1) Martinez possessed the methamphetamine; and (2) if he did, he did so with the intent to distribute the drug. Those are distinct facts necessary to prove the charge. As to the first, the State presented circumstantial evidence Martinez possessed the methamphetamine. It was discovered in the pocket of a coat Martinez had been wearing shortly before the discovery. That's enough. See *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016) (even gravest crimes may be proved with only circumstantial evidence). In addition, however, the jurors also

7

heard the implausible explanation Martinez promptly offered law enforcement officers for the drugs being in the coat—somebody from the neighborhood put a plastic bag filled with methamphetamine in the pocket of a stranger's jacket lying in the yard of one of the homes. Martinez' improbable notion is also circumstantial evidence of consciousness of guilt, i.e., that he actually had the methamphetamine all along. So was his shift away from that story at trial to implying Lampkin may have been responsible See *United States v. Lopez-Monzon*, 850 F.3d 202, 206-07 (5th Cir. 2017) (implausible exculpatory statements and shifting accounts indicative of guilty mind); *United States v. Stony End of Horn*, 829 F.3d 681, 687 (8th Cir. 2016); *United States v. Farley*, 607 F.3d 1294, 1334-35 (11th Cir. 2010).

The State also had to prove that whoever possessed the methamphetamine did so with the intent to distribute it rather than retaining it for personal use. Intent reflects a state of mind, and bad or illicit intent usually must be proved with circumstantial evidence, since wrongdoers typically do not announce their evil mindedness. See *Thach*, 305 Kan. at 83-84; *State v. Dixon*, 279 Kan. 563, 604, 112 P.3d 883 (2005). Here, the State relied largely on the expert testimony of Detective Tabor, as we have already outlined, to establish that the quantity and crystalline composition of the methamphetamine indicated a commercial supply. His undisputed testimony, although circumstantial, was sufficient to prove an intent to distribute on the part of whoever possessed the methamphetamine.

Here, each element was proved through a separate line of circumstantial evidence grounded in the trial testimony and exhibits. See *Banks*, 306 Kan. at 860. There was no impermissible stacking of speculative suppositions to establish a fact essential to prove Martinez' guilt.

• Martinez next argues the district court should have instructed the jurors on the lesser included crime of simple possession of methamphetamine. We review claimed

8

instructional errors through a set of sequential considerations. See *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018) (preservation, legal appropriateness, factual appropriateness, and prejudicial error). We first consider preservation. During the trial, Martinez did not object to the district court's failure to give a lesser included instruction and, therefore, failed to directly preserve the point. As a result, we review the omission for clear error.

Simple possession is a recognized lesser included crime of possession with the intent to distribute. So the instruction would have been legally appropriate. Factual appropriateness is another matter in this case. Given Detective Tabor's testimony, we fail to see a factual basis for an instruction on simple possession. A district court need not instruct a jury on a lesser included crime absent some trial evidence that would reasonably support a guilty verdict. *State v. Plummer*, 295 Kan. 156, 161-62, 283 P.3d 202 (2012). Martinez did not offer countering expert testimony that 111 grams of methamphetamine might be a personal use quantity. And Martinez never suggested as much in his own testimony. In theory, the jurors could have rejected Detective Tabor's testimony out of hand, but the district court had no tangible reason to believe they would. That sort of abstract possibility would not have warranted an instruction on simple possession as a lesser included crime. See K.S.A. 2020 Supp. 22-3414(3) ("In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . , the judge shall instruct the jury as to the crime charged and any such lesser included crime.").

Assuming the district court should have instructed the jurors on simple possession—an assumption we make not because we think it's correct but to give Martinez every consideration on this point—we would have to find clear error to grant him relief. After reviewing all of the trial evidence, we would have to be firmly convinced the jury would have reached a different verdict had the instruction on simple possession be given. *Williams*, 308 Kan. at 1451. We entertain no such conclusion given

9

the clear and undisputed evidence that the methamphetamine was of a commercial quantity and appearance.

In short, the district court did not err in omitting a jury instruction on simple possession of methamphetamine, and if it did, there was no clear error entitling Martinez to relief.

• For his next issue, Martinez contends the district court responded to a question from the jury during deliberations in a way that impermissibly coerced some or all of the guilty verdicts. We conclude Martinez invited any error by the district court and cannot complain on appeal about the response to the jury.

The jurors began deliberations about 10 a.m., immediately following the lawyers' closing arguments. About two hours later, the jurors asked to see some of the video evidence admitted during the trial and inquired about lunch. They also posed a question about unanimous verdicts. With the approval of the parties, the district court informed the jurors in writing that they all had to agree on any verdict. Just after 3 p.m., the jurors sent out note stating: "We are at 10 and 2. Any suggestions?" The district court did not assemble the jury in the courtroom to speak with the presiding juror or otherwise gather additional information. Again with agreement of parties, the district court sent this written response to the jurors: "All I can do at this point is encourage you to continue your deliberations with regard to this case." The jury returned the guilty verdicts about an hour later.

When a deliberating jury poses a question, the district court is obligated to provide a meaningful answer that is both legally and factually appropriate. *State v. Walker*, 308 Kan. 409, 423-24, 421 P.3d 700 (2018); *State v. Boyd*, 257 Kan. 82, Syl. ¶ 2, 891 P.2d 358 (1995). On appellate review, we consider the legal accuracy of the response without deference to the district court. But we otherwise defer to the district court's judicial

10

discretion in fashioning an answer for the jury. *Walker*, 308 Kan. at 423. At the same time, however, responding to jurors reporting they are at loggerheads or may be outright deadlocked entails a fraught exercise. A district court's improvident response may impermissibly pressure jurors to reach a verdict when they otherwise would not. See *State v. Struzik*, 269 Kan. 95, 109, 5 P.3d 502 (2000).

When the lawyer for a defendant participates in formulating and then approves the answer the district court provides in response to a question from jurors, the invited error rule precludes raising the adequacy of the response as a point for reversal on appeal. *State v. Adams*, 292 Kan. 151, 164, 254 P.3d 515 (2011) (invited error applied to response to deliberating jury); see *State v. Hargrove*, 48 Kan. App. 2d 522, 549, 293 P.3d 787 (2013) ("The invited error doctrine prevents a . . . destructive practice—a party claiming the trial court committed reversible error by acting in the very manner that the party advocated."). Even if a lawyer does not affirmatively join in a response, the failure to object to the response triggers review for clear error, since the district court has been deprived of a fair opportunity to fix any perceived problem. See *Walker*, 308 Kan. at 424.

The trial transcript shows the district court met with the lawyers and Martinez outside the presence of the jury to discuss the question posed during the afternoon deliberations. Martinez' lawyer discussed and endorsed the approach the district court took in responding and approved the content of the written answer to the jury. Any error in the response, therefore, would have been invited, and Martinez cannot complain about the response on appeal. The invited error rule disposes of the point adversely to Martinez. We need not further plumb the way the district court responded and offer no assessment of its efficacy.

• Martinez next contends the prosecutor committed prejudicial error in his closing argument to the jury and deprived him of a fair trial as a result. We disagree. In his closing argument, the prosecutor suggested Martinez could have entered the drug house

where the Sheriff's officers first saw him with Lampkin. The officers did not testify they saw Martinez go into or come out of the house. But they did not have the house in view during the time they drove around the block. So it would have been possible for Martinez to have gotten out of the SUV, gone in, and returned to the vehicle during that period.

The governing analytical framework for prosecutorial error first considers whether an error has occurred at all and then weighs the prejudice to the defendant resulting from an actual error. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Comments made during closing argument to the jury will be considered error if they fall outside the wide latitude afforded a prosecutor in discussing the evidence and the law at the close of a case. A defendant will be granted relief if the prosecutorial error deprived him or her of a fair trial under the standard set out in *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), for a constitutional wrong. *Sherman*, 305 Kan. at 98-99, 109.

The prosecutor's observation that Martinez *might* have gone into the house seems to be fair comment on the trial evidence and, therefore, would not be error. On the printed page of the trial transcript, it doesn't necessarily come across as a particularly persuasive argument, but that's beside the point.

Even if the statement were error (and we don't think it was), the prosecutor simply offered it as a passing comment in an extended discussion of the evidence. The idea was neither a cornerstone of the State's case nor an insight of such clarity as to demand a guilty verdict on any of the charges. The brief remark did not deprive Martinez of a fair trial even assuming it were prosecutorial error.

• Finally, Martinez argues cumulative error deprived him of a fair trial. Appellate courts may weigh the collective impact of trial errors and may grant relief if the overall impact of the deficiencies deprived the defendant of a fair hearing even when the errors considered individually would not necessarily require reversal of a conviction. *State v.*

12

*Harris*, 310 Kan. 1026, 1041, 453 P.3d 1172 (2019); *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). An appellate court examines the entire trial record to assess the aggregate effect of multiple trial errors. 301 Kan. at 167-68. The assessment takes account of "how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence." *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018).

Here, we do not have multiple trial errors to consider under the cumulative error rule. We denied relief to Martinez on his argument about the district court's response to the jury question because any error was invited. We effectively determined the response was invited, precluding appellate review, rather than finding it to be erroneous. But an invited error cannot be invigorated on appeal in the guise of a cumulative error analysis— only properly preserved errors can be considered. See *State v. Knight*, No. 105,092, 2012 WL 2325849, at *7 (Kan. App. 2012) (unpublished opinion).

We found no other errors. By definition, a single error cannot drive a cumulative error analysis, since there is nothing to cumulate. *State v. Leaper*, 291 Kan. 89, 107, 238 P.3d 266 (2010). Although we provided secondary rationales disposing of Martinez' arguments on the failure to instruct on simple possession of methamphetamine and on the prosecutor's closing argument assuming there had been error, we did so only as forensic exercises. We principally decided those issues adversely to Martinez because there was no error. Our alternative discussions premised on assumed and wholly artificial errors cannot jumpstart a claim for relief based on cumulative error.

Affirmed.